## LANGWORTHY v. THE CITY OF DUBUQUE.[1]

1. REVENUE: CASE FOLLOWED. *Morford* v. *Unger*, 8 Iowa, 82, as to the power of a city to tax agricultural lands, re-affirmed.

2. SAME: ESTOPPEL. Mere submission on the part of the citizen, except in extreme cases, to an illegal levy of taxes will not be construed into a recognition of the right to the extent of estopping him from subsequently denying it.

*Appeal from Dubuque District Court.*

THURSDAY, APRIL 10.

COMPLAINANTS seek to restrain the city from collecting certain taxes levied upon their lands for the year 1858. The lands assessed are outside the corporate limits as fixed by the "Act of February 24, 1847," but included by the amendatory act of January 22, 1853, (p. 89.) The right of the city to tax this character of property is the question involved.

---

[1] The following opinion determines two cases, each bearing the above title. S. M. Langworthy was the plaintiff in the one, and E. Langworthy was the plaintiff in the other.

*John H. O'Neill* and *John L. Harvey* for the appellants, contended that *Morford* v. *Unger*, 8 Iowa, 82, differed from these cases in several particulars: 1. In that case the act enlarging the city limits was approved July 14, 1856; and the question as to the right of the city to tax was raised upon the first levy thereafter, to wit, in 1857, while in these cases the act was passed in 1853, and complainants continued to pay city taxes until 1858, without resistance, and without any attempt to try the city's right to make the levy. 2. In that case the property consisted of one hundred and three acres of land used exclusively for farming purposes, and about one mile from the old city limits, and about the same distance from any land laid out as town lots; while in these cases the land is much nearer the old city limits, and a portion of it has been laid out into town lots.

*Wilson, Utley & Doud* for the appellees, argued the evidence elaborately, and contended that these cases are within the doctrine of *Morford* v. *Unger*, 8 Iowa, 82, and *Whiting* v. *The City of Mount Pleasant*, 11 Iowa, 483. To the point that plaintiffs were not estopped by acquiescence in the levy of the tax, they cited *The City of Cincinnati* v. *Combs et al.*, 16 Ohio, 181, and *The Bank of Chillicothe* v. *The Town of Chillicothe*, 7 Ohio, pt. 2, pp. 31–35.

WRIGHT, J. — The labor of counsel in these cases has been fully equal to their importance to the city and parties sought to be taxed. By the amendatory act the city limits were increased some 6,000 acres, and we are to determine whether the lands thus included, of the character and description specified in the petitions of complainants, (for these are two cases each involving the same question,) can be taxed by the corporation.

The question might be greatly elaborated, but, in our

opinion, it is so fully and satisfactorily settled in the case of *Morford* v. *Unger*, 8 Iowa, 82, that further argument could not make it clearer. We think it very manifest from the report of the master, which is fully warranted by the testimony, that these lands were not necessary for city purposes; that they were not lots, nor outlots, but lands used for mining, horticultural, grazing, farming and other similar purposes; that the sole object in bringing them within the city limits was to increase the city revenue that complainants did not, nor did they propose to lay the same off into lots, or invite purchasers to settle upon and occupy them, and that the effect of the legislation, if sustained, would be to subject their property to public use, without just compensation. True, there is some testimony tending to show that complainants voted at the municipal election, that they paid taxes on their property, assessed in 1857 and prior years, (but not always without entering their protest) and prayed for improvements, some of which were granted, and others not. But we do not think that any nor all these considerations combined, should estop them from contesting the right of the city to tax this property. Aside from some positive and affirmative act of the parties upon which the city relied, and was induced to act to its prejudice, the complainants would not be concluded. The right to property is a vested one. The power to tax it belongs alone to the legislative arm of the government, or local municipal organizations acting under the power given by the legislature. This power, while it is, when properly exercised, to be unreluctantly obeyed, yet operating as it does upon this vested right, it should be watched with jealous care, and if illegal, mere submission on the part of the citizen to this " one arm of the tremendous power of *eminent domain*," should not, except in an extreme case, be construed into a recognition of the right, to the extent of estopping him from subsequently denying it. And more

particularly is this so, when parties are under the impression that they are without remedy, and in ignorance of their rights in the premises.

We see no reason for disturbing those decrees, and they are therefore affirmed.