## MACKLOT v. THE CITY OF DAVENPORT.

1. **Constitutional law:** TAXATION. While § 722 of the Revision of 1860 and a similar statute in Ohio are almost identical, the difference between § 30, art. 3 of the Constitution of Iowa and § 2 of art. 12 of the Constitution of Ohio, are so essentially different that a determination of the constitutionality of one statute is not an authority for the construction of the other.

2. **Taxation:** REMEDY WHEN VOID. When the property of a party is seized to satisfy a tax levied under an unconstitutional act, or without authority or jurisdiction under the law, he may recover his property by replevin; or, when matters of equitable cognizance are also involved, he may restrain their collection by injunction; or he may by proper action make the collector and those who act under him liable for damages resulting from enforcing the collection of the same.

3. —— WHEN ERRONEOUS. The remedy of a party against whom taxes are *erroneously* assessed is, by application to the board of equalization for a correction of the error.

4. **Jurisdiction:** GENERAL RULE. When a statute upon a general subject has provided a tribunal for the determination of questions connected therewith, the jurisdiction thus conferred is exclusive, unless otherwise clearly expressed or manifested.

5. —— REVENUE LAW. When a statute in relation to revenue provides a tribunal for the correction of the errors of revenue officers, by proceedings in the nature of an appeal to it, such quasi-appellate jurisdiction is exclusive.

6. —— EXTENT OF RULE. Such exclusive jurisdiction does not prevent a party from resorting to the ordinary tribunal for a remedy against the malice or corruption of a revenue officer, or availing himself of the general remedies of *certiorari or mandamus* to such special tribunal.

*Appeal from Scott District Court.*

TUESDAY, DECEMBER 6.

THIS is a suit in equity brought to enjoin the city of Davenport, and Harvey Leonard, its marshal, from collecting a tax of seventy dollars, assessed against the plaintiff by the city for the year 1862, upon ten thousand dollars of "moneys and credits;" and for the payment of which tax the city marshal had levied upon certain personal property belonging to the plaintiff. The cause was referred to a referee, who reported the facts as follows:

1st. That it was agreed on the trial, by the parties, that the proceedings of the city were generally regular in levying and assessing the taxes for the year 1862; and that the levy in this case was made by the marshal under a duly executed tax warrant.

2d. That said plaintiff has resided and paid taxes in said city of Davenport for about twenty years.

3d. That one C. W. Verder was acting as assessor of said city in the spring of 1862, and as such, assessed the property of said plaintiff.

4th. That it had always been the usage and custom of the assessor of said city, in assessing the property therein, to make out and deliver to the persons to be assessed in said city, a blank list or paper, and request the person to be assessed, to fill up the same with his property subject to taxation, and when so filled up to deliver the same to the assessor; that the plaintiff has usually listed his property in this manner, and the same has been taken by said assessor and said city, as a full, true and correct list of his property; and no changes have ever been made by said city or its officers, after such delivery thereof by the plaintiff to said city or its officers.

5th. That, in accordance with said usage and custom, the

said assessor, on, or about the month of February or March, 1862, delivered to said plaintiff a blank list, and requested him to fill up the same, as he had heretofore done, with his property subject to taxation. That said plaintiff did so fill up the same and gave therein a full, true and correct list of all his property subject to taxation in said city of Davenport, but entered in said list no moneys or credits.

6th. That said assessor, in calling for the said list, asked said plaintiff why he had returned no moneys or credits? Plaintiff answered that he had none to return; when the assessor said he would be obliged to put some down for him, but took said list and left without doing so, and without making any change in said list.

7th. That afterwards, and without the knowledge or consent of said plaintiff, the said assessor, or some officers of said city, assessed said plaintiff for said year, in addition to the property returned in said list, as having the sum of ten thousand dollars of moneys and credits, subject to taxation.

8th. That at the time said taxes were assessed and levied, and for sometime before and since a time prior to January 1st, 1862, and up to about the middle of December, 1862, the accrued and *bona fide* debts owing by said plaintiff equaled his moneys and credits. That said liabilities were *bona fide* and legal, and were justly due and owing from said plaintiff to third parties.

9th. That the said city in the early part of the year 1862, levied a tax of seven mills upon a dollar, and taxed said plaintiff the sum of seventy dollars on said ten thousand dollars, as moneys and credits.

10th. That a warrant was duly delivered to said Leonard, who was then the marshal of said city, and that said Leonard as such marshal, levied upon the personal property of said plaintiff to collect said tax of seventy dollars.

.The referee has also reported his conclusions of law upon the facts so found, as follows:

1. That said assessment and levy of said tax was illegal and void.

2.. That this suit can be maintained against said defendants for the purpose of restraining the collection of said tax.

3. That said plaintiff is entitled to a decree in this cause against said defendant's declaring said assessment and tax illegal and void; and making said injunction heretofore granted in this cause perpetual, and against the city of Davenport for the costs of this action. The District Court rendered judgment in accordance with said report, and from which the city of Davenport appeals. Neither party controverts finding of the facts by the referee.

*Daniel L. Shorey* for the appellant.

*Brown & Sully*, for the appellee.

COLE, J. — I. It is claimed by appellant's counsel that § 722 of the Revision, which provides that "in making up the amount of money and credits, which any person is required to list or have listed and assessed, he will be entitled to deduct from the gross amount all *bona fide* debts owing by him," &c., is unconstitutional, because it is in conflict with § 30 of art. 3 of the Constitution, which provides that "the General Assembly shall not pass local or special laws in the following cases: for the assessment and collection of taxes for State, county or road purposes * * * *. In all cases above enumerated, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State * * * *."

Our attention has been called, in argument, to the case of *Exchange Bank of Columbus* v. *Hines*, 3 Ohio St. Rep., 1, in

*[margin note: 1. CONSTITUTIONAL LAW: taxation.]*

which the Supreme Court of Ohio held a statute of Ohio, of which § 722 of our Revision is almost a literal copy, to be unconstitutional, because it was in conflict with section 2d of article 12 of the Constitution of Ohio, which provides that "laws shall be passed, taxing, by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise, and also all real and personal property, according to its true value in money, * * * * and personal property to an amount not exceeding in value two hundred dollars for each individual, may by general laws be exempted from taxation * * * *."

While in the view which we take of the material question involved in this case, it becomes wholly unnecessary to decide the constitutional question made by counsel in the argument; yet, it may not be improper to remark, that the difference between the clause of the Constitution of Iowa, relied upon, and the clause of the Ohio Constitution, upon which the Supreme Court of Ohio based its decision in the case of the *Exchange Bank* v. *Hines, supra*, is so essential, that the correctness of that decision might well be conceded without at all involving the necessity of holding that § 722 of the Rev. is in conflict with our Constitution.

II. The precise question presented in this case has not been determined by this court. The case of *Morford* v. *Unger*, 8 Iowa, 82, decided that an action of replevin might be maintained by a person whose property had been seized to satisfy a tax levied under an unconstitutional law; or, in other words, where there was no jurisdiction or authority to levy the tax, a warrant for its collection would not justify an officer in seizing property to satisfy it, and, of course, the owner of property seized under such a tax warrant could maintain replevin for it. The case of *Morford* v. *Unger* was followed in the case of

2. TAXA-
TION:
remedy
when void.

*Langworthy* v. *The City of Dubuque*, 13 Iowa, 86, which was very analogous in all its controlling features.

In the present case, there is no question but that the City of Davenport had jurisdiction and authority to levy a tax upon the property of the plaintiff in the time and manner the tax was levied, and to tax his moneys and credits, after deducting the gross amount of all *bona fide* debts owing by him. It is claimed, however, and so found by the referee, that the plaintiff was over assessed in his moneys and credits, for that he had none over the gross amount of the *bona fide* debts owing by him, whereas he was assessed as having ten thousand dollars.

This case is one, therefore, of unjust over assessment, and is, to the extent of such excess, clearly erroneous. There is, however, a clear distinction between such case of erroneous or over assessment, and a case of assessment without any authority, such as an assessment made under an unconstitutional law, or the assessment of property for which the law has made no provision for assessing or has expressly exempted from assessment and taxation. The distinction is the same in effect and just as clear as that between an erroneous judgment of a court having jurisdiction of the person and subject matter, and the judgment of a court having no such jurisdiction. And, to illustrate still further, a tax warrant, regular on its face, issued for the collection of a tax levied under such erroneous assessment, would afford protection to the officer serving it, while a like tax warrant, issued for the collection of a tax levied under an unconstitutional law, or without the authority of law, would afford no protection whatever; just as an execution, regular on its face, issued upon an erroneous judgment of a court having jurisdiction, would afford complete protection to the officer serving it, while a like execution, issued upon a judgment rendered by a court having no

jurisdiction, would constitute no defense or protection to the officer exercising authority under it.

The remedy afforded by the law to a party whose property is seized to satisfy a tax levied under an unconstitutional law, or levied without the authority or jurisdiction under the law to levy it, is clear. He may bring replevin for his property seized to satisfy such tax, as in *Morford* v. *Unger, supra;* or where matters of equitable cognizance are also involved in the case, he may restrain their collection, as in *Langworthy* v. *The City of Dubuque, supra;* or he may, doubtless, in the proper actions, make the collector, and those under whose direction he acts, personally liable for the damages resulting to him by reason of such tax.

But the question in this case is, what remedy does the law afford to a party who has been erroneously assessed 3. — When and taxed? Our statute has provided (Rev., §§ erroneous. 739, 740), for the equalization of assessments for the ordinary state and county revenue, and authorizes any person, who may feel aggrieved at anything in the assessment of his property, to appear before the board of equalization and have the same corrected. So far as the city of Davenport is concerned, the charter authorizes the city council to correct or equalize any erroneous or injudicious assessment. The question then arises, whether the methods thus provided by the general statute and the charter of the city of Davenport, are respectively exclusive in the cases to which they apply, or whether the remedies thus provided are cumulative, so that a party may resort to the ordinary judicial tribunals of the county, or to such special tribunal at his election?

The correct, and as we believe, the ordinary method of fixing the rate of tax necessary to be levied in any given year, for a city, county or the State, is first to ascertain the amount or assessed value of the property in such city,

county or the State, and then ascertain the amount of revenue necessary to carry on the government, for which the tax is to be levied, and from these data, which ought, for the safety of such government, to be fixed and certain, the rate is easily and certainly determined. But suppose that after such rate has been fixed and the levy made accordingly, every tax-payer is at liberty to controvert the correctness of his assessment, and when the collector calls for his tax, he may enjoin the collection on the ground of error in the assessment, and litigate that question for a series of years—even the ordinary pendency of equity causes—and in many cases such litigant would doubtless be successful, whereby the collection of the revenue would be indefinitely delayed, and greatly reduced in amount, what would become of the government, and how, in the mean time, would our schools and charitable institutions be supported, and in what manner could the executive, legislative and judicial departments of such government be kept in healthful and successful operation? To hold that such course could be pursued, would be to hold that the government had provided for its own strangulation at the hands of one of its departments.

Again, it is a well recognized fact that more or less error has always been connected with the assessment, levy and collection of taxes. This fact finds abundant verification in the almost universal failure and insufficiency of tax titles; this has been true, not only in Iowa, but in every State of the Union. This insufficiency of tax titles has resulted from the errors and irregularities in the assessment, levy and collection of the taxes; and if a tax-payer may enjoin the collection of his tax for an error in the assessment, he may enjoin for any other error, and to sustain such injunctions and hold that taxes may be enjoined for errors and irregularities, would result in a flood of injunctions all over the land, and stay the collection of reve-

Macklot v. The City of Davenport.

nue to the bankruptcy of every government, city, county. and State.

It is apparent from this general view of the question, that since the statute has provided a tribunal where any

*4. Juris-diction: general rule.* person may correct an erroneous assessment of his property, before such assessment becomes the basis of the rate of levy, and with equal and certain justice to himself, and without prejudice to the government, he ought to be required to apply to that tribunal for its correction. It may, therefore, be safely held that where a statute upon a particular subject has provided a tribunal for the determination of questions connected with that subject, that the jurisdiction thus conferred is exclusive,

*5 — Revenue law.* unless otherwise expressed or clearly manifested; and that generally where a statute in relation to revenue provides a tribunal for the correction of the errors of the officers by a proceeding in the nature of an appeal to it, that such *quasi* appellate jurisdiction is exclusive.

Of course, this exclusiveness of jurisdiction in the special tribunal, relates only to the correction of errors in the par-

*6. — Extent of rule.* ticular matters provided for, and does not prevent a party from resorting to the ordinary tribunals for remedy against the assessor, when from corruption or malice he has over assessed, or the like. *Fuller* v. *Gould*, 20 Vermont (5 Washb.), 643; nor, from the general remedy by *certiorari* to the special tribunal (Rev., ch. 140); nor from *mandamus*. *Hershey* v. *Fry*, 1 Iowa, 593. So it will be seen, that ample remedies are afforded the citizen and taxpayer, even when he is confined to the course provided by statute, and at the same time the operations of the government, whether State or municipal, are not unnecessarily interfered with. From the considerations already suggested, as well as from many others, which will readily suggest themselves to the legal mind, it is clear, both upon principle and policy, that the tax-payer should be limited to the

remedy provided by the statute. But while this question is a new one in this State, it has undergone judicial determination in very many other States of the Union, and, although no two States agree in the method or tribunal provided by statute for the correction of the errors connected with the assessment, levy, &c., they all agree in holding that whatever the remedy is, which the statute has provided, such remedy is exclusive.

In the case of *Osborn* v. *The Inhabitants of Danvers*, 6 Pick., 98, the plaintiff sued to recover back money which he had paid as taxes, upon an excess of assessment. The plaintiff seasonably exhibited to the assessors a list of his estate, upon which the assessors fixed the valuation at $8,350; to this sum the assessors added $18,000, which they estimated as the value of personal property not mentioned in his list, and which was invested in a mercantile establishment in New York, in the name of, and owned by plaintiff, but managed by his son.

The plaintiff claimed to recover back the proportion assessed on the $18,000, on the ground that it was assessed on property for which he was not liable to be taxed in Danvers. WILDE, J., delivering the opinion of the court, says, "Whether the plaintiff was liable to be assessed in this State, for the personal property which he had in trade in New York, is an important question, upon which in this case we are not required to express an opinion; for, admitting that he was not, still we think that this action cannot be maintained. The remedy, and the only remedy, for an over valuation and assessment, is under the statute of 1785, ch. 50, § 10, by which it is provided, that whenever any person shall be aggrieved by being overrated in the assessment of any tax, he may apply to the assessors to make a reasonable abatement; and if they refuse so to do, complaint is to be made in the nature of an appeal, to the Court of General Sessions of the Peace, who are

authorized to relieve him. This is an adequate and convenient remedy; but great mischiefs would follow, if we were to hold that an excess of valuation would render an assessment illegal and void. And it is immaterial whether the excess is caused by including in the valuation, property of which the person taxed is not the owner, or that for which he is not liable to be taxed. In both cases the remedy is the same. As the plaintiff was liable to taxation for his personal property, the assessment was valid, although he was assessed for more than his due proportion. His only remedy is by application for an abatement; for when a new right is created by statute, which at the same time provides a remedy for an infringement of it, that remedy must be pursued." See, also, *Gedney* v. *The Inhabitants of Tewkesbury*, 3 Mass., 309; *Andover and Medford Turnpike Corporation* v. *Gould*, Id., 44; *Bates* v. *The City of Boston*, 5 Cush., 1, 93; *Little* v. *Greenleaf et al.*, 7 Mass., 239; *Howe* v. *The City of Boston*, 7 Cush., 273.

In *Hughes* v. *Kline et al.*, 30 Penn. State, 227, which was a bill to enjoin the collection of taxes upon certain lands which the plaintiff had purchased at private sale, of the owner, at $48,750, and which had, for the three years preceding, been assessed at $37.00, and was so assessed that year by the assessors, but the valuation was raised by the commissioners to $76.00, which the plaintiff claimed was excessive and contrary to law. The defense showed that the plaintiff had sought his remedy under the statute and failed. The court, per THOMPSON, J., say: "The legislature has thought proper to place the assessment and collection of taxes in the hands of county and township officers and has constituted the county commissioners generally, the appellate tribunal for the correction of assessments, and in Schuylkill county, superadded thereto an appeal to the Court of Common Pleas from their decision. The proceedings are to be in all cases, as of necessity, summary;

otherwise the raising the means for carrying on the muni-
cipal business of the counties might be greatly retarded
and the public interests much prejudiced.   Wherever this
power of revision has been reposed, in addition to the
necessity of the process being summary, for the same rea-
son, its action is to be final and conclusive, whether it be
the act of the court specially authorized, or that of the
county commissioners.   To such tribunals, constituted for
the purpose, parties dissatisfied on account of excessive
taxation must appeal.   *   *   *   *   The bill does not
complain of want of jurisdiction in the officers to levy and
assess the taxes on the lands in question, or that these lands
were not the subject of taxation and liable to be sold for
taxes; but against the regularity of raising the valuation,
and the consequent increase of taxes.   This was within
the jurisdiction of the Common Pleas; and if the remedy
for correction had been attempted by bill in the first
instance, it would have availed nothing, as the court would
have had no jurisdiction for the purpose sought to be
obtained by this bill, there being a special remedy by
statute.   It will not do to permit the collection of taxes to
be interfered with by such process, unless in the clearest
cases of the want of jurisdiction in the assessing or collect-
ing officers.   The effects would be mischievous and disas-
trous."   See also *Kimber* v. *Schuylkill,* 8 Harris, 366;
*Wharton* v. *Birmingham,* 37 Penn. State, 371.

In the case of *Deane* v. *Todd et al.,* 22 Missouri, 90,
which was a case (like the one now under consideration)
where the plaintiff filed his petition to enjoin the collector
from collecting the tax assessed upon a note for $72,300,
owned and held by the plaintiff, upon the Potosi Lead
Company, an insolvent corporation, LEONARD, J., deliver-
ing the opinion of the court, after premising "that the
plaintiff ought not to have been taxed on account of the
debt due him from the Potosi Lead Company," and that

"for the correcting of such errors the law had provided a special tribunal, and directed the assessor's book to remain in the County Court clerk's office, open to inspection," &c., proceeds as follows: "It cannot be maintained that the ordinary judiciary tribunals have authority to stay the collection of a State and county tax, at the suit of a tax-payer, upon the ground of an excessive or otherwise erroneous assessment. It was fit that a remedy should be provided to correct the errors of the assessor, but the necessities of the case required that it should be a speedy and summary one, and such a remedy has accordingly been provided and must be considered as exclusive * * * * *. The assessment may be erroneous, but if it be, we cannot remedy it without overturning fundamental legal principles, and the party, therefore, must apply elsewhere for relief."

In the case of *Chicago, Burlington and Quincy Railroad Company* v. *Frary et al.*, 22 Ill., 34, which was a case where the plaintiff had obtained a temporary injunction against the collection of certain taxes, the court, per CATON, Ch. J., after showing the ruinous consequences which must flow from the exercise of such jurisdiction, say: "Neither precedents nor reason will warrant the use of the writ of injunction for such purposes, and to produce such results. Where the law affords an adequate remedy, this writ cannot be used, and especially where greater mischief will flow than good will result from it, the court will always withhold this species of relief. Equity cannot attempt to prevent, any more than it will redress, all wrongs."

And in the case of *Munson* v. *Minor*, 22 Ill., 594, the same court, per WALKER, J., in a case where a temporary injunction had been allowed, say: "Upon a careful examination of all the elementary treatises on equity jurisprudence, as well as the adjudged cases to which we have had access, we do not find that a court of equity has assumed

jurisdiction to enjoin a tax for mere errors in its assessment or the collector's warrant, in case it was levied by officers *de facto*, when authority to levy such a tax was incident to their office  *  *  *.  If courts of equity were to entertain jurisdiction and enjoin the collection of taxes in all cases in which mere informalities and irregularities have occurred in their assessment and levy, it would lead to great delay in their collection, and tend seriously to embarrass every department of the government, whether of state, county, town or city, and would render the operation of the school system very precarious.  While, if the party conceiving himself aggrieved is left to his remedy at law, no such inconveniences will be felt.  And even if we had the power to assume jurisdiction to grant relief, when we see that its exercise would lead to such embarrassment in the finances of these various departments of our municipal polity, we should hesitate long before assuming the exercise of such a power.  But we conceive that a court of equity is vested with no such authority."  See, also, *Town of Ottawa* v. *Walker et al.*, 21 Ill., 605 ; *Merritt* v. *Farris*, 22 Id., 303.

That the only remedy which the party has for over-assessment, in the first instance, is by application for abatement under the statute, is directly decided in the following cases: *The State* v. *Dauser*, 3 Zabr., 552 ; *The State* v. *Powers*, 4 Id., 406 ; *The State* v. *Manchester*, 1 Dutcher, 531 ; *Greene* v. *Mumford*, 4 Rhode Island, 313 ; *Randle* v. *Williams*, 18 Ark., 380 ; *The State* v. *Southern Steamship Company*, 15 La. An., 497.  While most of these cases relate to State or county revenue, the principle is equally applicable to city revenue, and is so recognized in some of the cases.  We conclude, therefore, that, since the charter expressly authorizes the city council " to correct or equalize any erroneous or injudicious assessment," it was the duty of the plaintiff to have sought relief before that tribunal;

and that it is not competent for a court of equity to inter-fere by injunction to restrain the collection of taxes erroneously assessed.

III. There is another view of the case, which, perhaps, upon close examination, might be found equally decisive, and that is, that the party would have his remedy at law against the assessor, or the city, for the recovery of any money paid for taxes wrongfully assessed, and having such adequate remedy at law, could not, of course, resort to a court of equity. *Huckins* v. *The City of Boston*, 4 Cush., 543; *Hershey* v. *Fry*, 1 Iowa, 593; *Garnes* v. *Robb*, 8 Id., 193; *Harrington* v. *Cubbage*, 3 G. Greene, 307; *Claussen* v. *La Frenz*, 4 Id., 224. But without determining this question, for the reasons stated under the second point in this opinion, the judgment of the District Court will be reversed, and the petition dismissed absolutely at plaintiff's costs.

Reversed.