HON. ALANSON H. BARNES, } ASSOCIATE JUSTICES.
HON. GRANVILLE G. BENNETT, }

FROST, ET AL V. FLICK.

1. *OFFICERS:* OFFICIAL DUTIES: NEGLECT. The neglect by a county officer of his official duty, cannot be made the grounds of a proceeding in chancery by a private citizen, unless damaged by such action, or thereby deprived of some substantial right.

2. *TAXATION:* OBJECTS AND PURPOSES: IRREGULARITIES. The object of taxation is the raising of revenue for governmental purposes; if the same end is accomplished, even though the proceedings may be irregular, that would have been reached had all the forms of the law been strictly complied with, equity cannot be invoked to undo, or restrain from the doing of, that which it was the object and purpose of the law to accomplish.

3. *TAXES:* SALE OF REAL ESTATE: RIGHTS OF PARTIES. The right of a party under the statute providing that "no real estate belonging to any person shall be sold for taxes while personal property belonging to such person can be found by the treasurer or collector," is a personal right, of the violation of which the tax payer alone can complain, and of which no third party can be allowed to take advantage.

4. ————: LEVY AND COLLECTION: LEGAL PROCEEDINGS. The levy and colectionl of taxes are legal proceedings under the statute, for the purpose of apportioning

and enforcing a recognized obligation due the public, and can no more be interfered with or regulated by courts of equity, than can proceedings at law upon private claims.

*5. COURTS OF EQUITY:* POWERS: JURISDICTION. Courts of equity do not sit to reverse or correct errors and mistakes of law, and cannot attempt to prevent, any more than it will redress, all wrongs.

*6.* ———: ———. Equity will not interfere by injunction to restrain the enforcement of tax proceedings on the ground of irregularities in the assessment of the tax, or in the execution of the power conferred upon taxing officers.

*7. TAX:* ILLEGALITY: COLLECTION WHEN RESTRAINED. Courts of equity will interfere by injunction to restrain the collection of a tax, when it is illegal or unauthorized, or when the property assessed is not subject to the tax, or where fraud has been practiced by the taxing officers.

*8.* ———: ———: ———. Before an injunction will issue to restrain the collector of a tax, it must clearly appear that the tax is not such an indebtedness as the duty of the citizen, defined and regulated by law, requires him to discharge.

*9.* ———: ———: ———. In no case will the collection of a tax be enjoined where it is not shown that the injury resulting from its enforcement would be irreparable, and this fact must appear in the bill by issuable averments.

## *Appeal from Yankton County District Court.*

This is a proceeding in equity to restrain the sale, by the treasurer of Yankton county, of certain real estate, for the taxes of 1869, 1870, 1871 and 1872, on the grounds of certain irregularities, viz.:

1. That no assessment roll was made out and delivered to the county clerk as required by section 24, chapter 25, laws of 1868–9.

2. That plaintiffs' grantors had at the time the taxes became due, and still have personal property sufficient to satisfy the same, and that the sale or attempted sale of the real estate, without first exhausting such personal property, is in violation of section 59, same act.

To the complaint defendant demurred on the ground, " that said complaint does not state facts sufficient to constitute a cause of action in favor of plaintiffs, against defendant." Other grounds are stated in the demurrer but not urged.

The demurrer was sustained and plaintiffs appeal.

*C. J. B. Harris*, for appellants.

The assessments must be made out and delivered to the clerk of the county of Yankton on or before the 1st Monday of April in each year. (Sec. 24, chap. 25, laws of 1868–9, page 272.) Section 27 of the same act provides, that the board of equalization shall have a session of not less than two days at the county seat, commencing on the 1st Monday in April in each year, for the purpose of correcting the assessment roll in their county. An important right is thereby secured to the tax payer, and if the returns are not made the tax payer is deprived of a substantial right and the assessment is void. (Blackwell on Tax T., 118 and 123; 7 Conn., 550; 3 U. S. Dig., 508, § 133; 14 Ills., 223; 14 U. S. Dig., 547, § 87.) Without a valid assessment made and returned within the time, and as by law provided, there can be no valid levy of taxes. (Blackwell on Tax T., 106.) Had the taxes on said real estate been legal, the advertising and offering the same for sale, before exhausting the personal property subject to seizure and sale, for the payment of said taxes at the time the said taxes became due, and at the time they were offered for sale, is in violation of the express provisions of the statute, and illegal and void. (Sec. 59, laws of 1868–9, 288; Blackwell on Tax T., 176–7, and cases cited; *Yancy v. Hopkins;* 1 Munford, 419; 2 U. S. Eq. Dig., 606, § 15.) Courts of equity will interfere by injunction to restrain an illegal tax sale. (Blackwell on Tax T., 481–3; Hilliard on Injunctions, 455; 18 Iowa, 70; 30 Ohio, 73; Nash's Prac., 440, and cases there cited; 1 Central Law Journal, 267, *Tilton v. Or. C. M. R. Co.;* 49 N. Y., 243, *Clark v. Norton, et al;* 28 Wis., 583, *Judd, et al v. Town of Fox Lake;* 36 Ind., 175, *Shoemaker v. Commissioners Grant Co.;* U. S. Dig., 1873, page 374, § 40; U. S. Dig., 1872, page 669, § 67; ibid, 360, § 45; U. S. Dig., 1871, page 666, § 66; ibid, 672, § 157; laws of 1868–9, page 262, chap. 25; ibid, 291, §§ 64 and 71.)

*Moody & Cramer*, for appellee.

The grounds upon which relief is asked, are:

1. Because plaintiffs' grantors had personal property, out of which the tax could have been made.

2.   Irregularities in the assessment of the tax.

We submit that neither furnish a reason for the interference of a court of equity to enjoin the collection of the tax.   It is only when the tax assessed is itself wholly *illegal* and *unauthorized by law* that courts of equity interfere to prevent a cloud upon title, and not where the tax being authorized and valid as in this instance some irregularities may have crept in in the manner of its assessment.   (*Hallenback v. Hahn*, 2 Neb., 424, and authorities there cited; High on Inj., §§ 355 and 356, and notes; *Maclot v. Davenport*, 17 Iowa, 379; *Warden v. Supervisors, etc.*, 14 Wis., 618 and 623; *Chicago, etc. v. Frary*, 22 Ills., 34.)   The taxes being made by statute a perpetual lien and the plaintiffs taking title by quit claim, they took subject to the lien and are in equity as well as law bound to pay such taxes, and cannot come into a court of equity and obtain relief from the payment of a just debt due the public by pleading the laches of some officer in not enforcing its collection in a particular manner.   (2 Neb., 424.)

BENNETT, J.—The determination of this appeal involves the question as to what extent and in what cases the powers of a court of equity may be invoked to restrain the collection of taxes.   As it is here presented for the first time in this Territory, we have examined it with much care.

Before proceeding to notice the main point in issue, we observe, that, even admitting the soundness of the propositions laid down and contended for by appellants, they furnish no grounds for the relief asked in this case, as plaintiffs have, by their own showing, no standing in a court of equity.

They first insist that the relief prayed should be granted, for the reason that no assessment rolls were returned to the county clerk as provided for by section 24, chapter 25, laws of 1868-9.   If true does it in any manner appear that they were injured or damaged by such official neglect?   Admitting it to be true, that the filing of the assessment rolls with the county clerk was necessary to enable the tax payer to appear before the equalization board, appellants do not claim that they or their grantors were deprived of a substantial right

which they then desired to exercise, or which subsequent events have shown should have been exercised. There is no pretense that this property was not subject to taxation, or that the valuation or assessment was too high, or that the tax was levied for an illegal purpose. What complaint could then have been made to the board of equalization, or what relief asked? The object of taxation is the raising of a revenue for governmental purposes; if the same end is accomplished, even though the proceedings may be irregular, that would have been reached had all the forms of the law been strictly complied with, equity, regarding the substance rather than the form, the end rather than the means, cannot be invoked to undo, or restrain from the doing of that which it was the object and purpose of the law to accomplish, and relieve a party, on a mere technicality, from the discharge of a legal obligation due the public, which he cannot even allege in his complaint to be unjust or burdensome.

But again, how can appellants avail themselves of the second ground on which relief is asked, viz.: that the personal property of their grantors should first be exhausted before the real estate can be sold. Section 59 of chapter 24, laws of 1868–9, provides: " No real estate *belonging to any person* shall be sold for taxes, while personal property belonging to *such person* can be found by the treasurer or collector, and no taxable property shall be exempt from levy and sale for taxes." The appellant Frost became the owner of the real estate advertised for sale, and which sale they seek to enjoin, in August, 1872. It seems clear to us that the right to have personal property exhausted before real estate can be sold, is a personal right, of the violation of which, the tax payer alone can complain, and of which no third party can be allowed to take advantage.

But again the language of the statute is plain and unmistakable: " no real estate belonging to *any person* shall be sold for taxes, while personal property belonging to *such person*, can be found, etc." This real estate *belongs* to appellants; do they complain that *they* have personal property that should first be exhausted? No; but that their grantors have, and they

undertake by this extraordinary proceeding to remove the lien. Appellants do not disclose the character of the convey-ance to Frost. It may have been made by an order of court, on adjudging Frost to be the equitable owner of the land, in that event how can he claim that he should not pay the taxes? It may be a quit claim; if so, he took thereby only the in-terest of his grantors, subject to the lien for taxes, and is bound to pay them. If it was a deed with full covenants of warranty, then certainly he has a complete remedy at law, and is in no position to ask any relief in a court of equity. But these considerations aside, should the relief asked be granted in any case on the grounds stated?

The levy and collection of taxes are legal proceedings under the statute, for the purpose of apportioning and enforcing a recognized obligation due the public, and can no more be in-terfered with or regulated by courts of equity, than can pro-ceedings at law upon private claims. (*Warden v. Supervisors*, *etc.*, 14 Wis., 618.) Revenue laws, from the very magnitude of the subject, and the diversified interests involved, are somewhat complex, and for the purpose of carrying out their various provisions call in the services of different officials. These officers, from the nature of things, are not always ex-perienced, or men of good business qualifications; the result is, that we frequently find departures from the strict letter of the statute, and irregularities in their proceedings. Should courts of equity undertake to interfere in all such cases, they would find their calendars crowded, collectors would con-stantly be embarrassed by injunctions, the collection of the revenue would be retarded and in many instances defeated, while the public would be burdened with the costs and ex-penses of litigation, and the resources of the government nec-essary for its maintainance in all its departments, rendered inadequate.

It has been well said that courts of equity do not sit to re-verse or correct errors and mistakes of law, and cannot at-tempt to prevent, any more than it will redress, all wrongs.

It is no answer to say, let those whose duty it is to admin-ister the revenue law do it with greater care, and do every

Frost et al vs. Flick.

thing which the law requires, just as it requires, and at the time specified, and be careful that they do no more than is required. We must take things as they are, and look at practical results. (*Chicago, etc. v. Frary*, 22 Ills., 34.)

The doctrine seems well settled, that equity will not interfere by injunction to restrain the enforcement of tax proceedings on the ground of irregularities or errors in the assessment of the tax, or in the execution of the power conferred upon taxing officers, the remedy at law being deemed sufficient in such cases. (High on Inj., § 355; *Maclot v. Davenport*, 17 Iowa, 379; *Warden v. Supervisors, etc.*, supra.)

The cases in which courts of equity have exercised jurisdiction in matters of this character, will be found to be confined almost exclusively to those wherein the tax itself is illegal or unauthorized—not a legal tax assessed in an irregular manner—(*McClure v. Owen*, 21 Iowa, 133;) or where the property assessed is not subject to the tax; (*I. C. R. R. Co. v. County of McLean*, 17 Ills., 291;) or where fraud has been practiced by the taxing officers. (*Cleghorn v. Postlewaite*, 43 Ills., 428.)

The reason for the rule reaches back of the official acts of taxing officers. The obligation to contribute to the support of government, rests upon all citizens regardless of the duties imposed on assessors and collectors. The debt due the public is not *created* by the assessment of taxes, and the proceedings necessary for their collection, but is only thereby apportioned and enforced. Hence irregularities and defects in the proceedings do not extend to or effect the original obligation inherent in and growing out of the political compact. And we might formulate the doctrine in these words: that before an injunction will issue to restrain the collection of a tax, it must clearly appear that the tax is not such an indebtedness, as the duty of the citizen, defined and regulated by law, requires him to discharge. A party will certainly not be permitted to come into a court of equity, and say the debt is justly due, and I am morally and legally bound to pay it, but the proceedings instituted for its enforcement are irregular. He that seeks equity must first do equity.

It is laid down as a broad principle, that in no case will the collection of a tax be enjoined where it is not shown that the injury resulting from its enforcement would be irreparable, and this fact must appear in the bill by issuable averments. (High on Inj., § 362; *Ritter v. Patch*, 12 Cal., 298.) If the tax is, in itself a legal one, and the property on which it is levied subject to taxation, then it cannot be said that any such injury could result from its collection. It might financially embarrass the tax payer, it might cast a cloud on his title, it might absolutely bankrupt him, but would these be any reasons for the interference of a court of equity? Assuredly not, or the powers and process of such court would find ample employment.

The grounds on which relief is asked in this case, are beyond all question, merely technical, relate to irregularities in the manner of assessing, and the mode of collecting the tax; and while we do not undertake to say here what effect might be given to them in a court of law, where a title acquired under a tax sale might be involved, we are clearly of opinion that they are wholly insufficient to authorize the interference of a court of equity.

Admitting, as the demurrer does, the allegation to be true, that the assessment rolls were not filed with the county clerk as required by statute, does it by any means necessarily follow that the tax was levied for an illegal purpose, or that the property was not subject to taxation? Certainly not. If such were the facts in the case, the relief would be granted on proper showing, whether the assessment rolls were so filed or not. If not illegal, and the property was justly chargeable, of what have appellants to complain? The objection is a bald one, especially when unaccompanied by any averment of damages arising from the omission, and is trifling and captious in the extreme—one which no chancellor should be asked or expected to notice.

The second point is one on which some courts have divided. But keeping in view the governing principles which we have laid down, it is one of easy solution. It will be borne in mind that the objection is not to the character or amount of

the tax, but simply as to what kind of property shall be sold for its satisfaction. We cannot be called upon, in a proceeding of this character, to determine the question between appellants and a third party, as to who should pay the tax—it is made by statute a perpetual lien upon the real estate, and that lien cannot be effected by any agreement between appellants, and their grantors, as against the public. It is a matter of indifference to the public interests, who pays the tax or out of what kind of property it is made. But it is of the highest importance that it be paid, and that speedily, and with as little cost and expense to the public treasury as possible. A party occupies no very equitable ground to say the least, who admits that land which he owns is chargeable with a tax, that such tax is just and legal, but that he will make the error or neglect of an officer his excuse for delaying or defeating its payment.

The last article of personal property subject to taxation belonging to the poor man, may be seized and sold for the satisfaction of the tax, and courts of equity in most cases could afford no relief, while the rich man, with his broad acres, and money to fee attorneys, if permitted to take advantage of such quibbles and technicalities, might indefinitely postpone the discharge of his obligation, thereby throwing additional burdens on willing tax payers, and embarrassing the public treasury.

The tax in this case is due—it is just—it is legal, and common justice demands it should be paid. With the manner of its collection, we have nothing to do. (*Hallenbeck v. Hahan*, 2 Neb., 377.)

If the officer has acted illegally, contrary to the provisions of the statute, to the damage of appellants, they must seek redress in the courts of law—there they have an adequate remedy.

In the case of *Maclot v. City of Davenport*, supra, Judge Cole in delivering the opinion of the court, uses the following language:

" It is a well recognized fact, that more or less error has always been connected with the assessment, levy, and collection

of taxes. This fact finds abundant verification in the almost universal failure and insufficiency of the tax titles. This insufficiency has resulted from the errors and irregularities in the assessment, levy and collection of taxes; and if a tax payer may enjoin the collection of the taxes for an error in the assessment, he may enjoin for any other error; the result would be a flood of injunctions all over the land, and the collection of the revenue would be stayed, to the bankruptcy of every government, city, county, or state. * * To hold that such a course could be pursued would be to hold that the government had provided for its own strangulation at the hands of one of its departments."

We are, therefore, of opinion that the demurrer was properly sustained, and the judgement of the court below is

AFFIRMED.

## DECEMBER TERM, 1875.

PRESENT:

HON. PETER C. SHANNON, CHIEF JUSTICE.

HON. ALANSON H. BARNES,
HON. GRANVILLE G. BENNETT, } ASSOCIATE JUSTICES.