Term, 1872.]                    Floyd v. Gilbreath et al.

FLOYD v. GILBREATH et al.

ILLEGAL TAXES—*By what courts and remedies, relieved against it, etc.*—On bill by plaintiffs, who sue for themselves and all other tax-payers of Scott county, alleging that certain taxes were *illegally* levied, praying that the collector be enjoined from the collection of the same, the court granted a restraining order. After appearance of parties, on demurrer, the injunction was made perpetual: *Held,*

1st. That the Circuit Courts of this State, under the present Constitution, though creatures of the Legislature, have the same jurisdiction that they possessed prior to its adoption, and they are clothed with all the powers conferred upon them by the Constitution of 1836.

2d. While the present revenue law provides the manner in which a party aggrieved may apply to have the *appraisement* or the *valuation* of his property corrected, there is no provision to correct an *illegal* or *erroneous levy* by the County Court and, in such case, he must look to the superintending control and appellate jurisdiction of the Circuit Courts over the County Courts, and where no remedy by appeal is provided by the act, he would be entitled to relief by *certiorari* or *prohibition;* and under these writs, the Circuit Court may revise the proceedings of the County Court, and if, from the record, it appears that the County Court has proceeded in a matter outside of, or in excess of its jurisdiction, the proceedings may be stayed or quashed, by *prohibition,* to the extent of the illegality, or quashed as to the whole, on *certiorari.*

3d. Where it is desired to correct an error which exists *de hors* the record, as where the levy, on the face of the proceedings to impose it, is a valid lien on land, and extrinsic evidence is required to show its invalidity, neither the writ of *certiorari* or *prohibition* are of any value, and, in such a case, a court of equity will interfere to prevent a multiplicity of suits, irreparable injury or a cloud upon title to real estate.

4th. Where the error or illegality appears of record, and the tax-payer does not choose to avail himself of his remedy by *certiorari* or *prohibition* to *prevent* the evil, he may have his action of trespass against the officer of his property; and replevin will also lie to recover personal property seized or sold, in whosesoever hands it may be. Or where the proceedings imposing the tax are regular on their face and the tax is paid under protest to avoid sale, the party may have his action to recover the money so paid.

5th. Where the proceedings are void upon their face, they form no cloud upon title and no ground of interference by a court of equity, and if they are not void upon their face, but merely voidable or irregular, a court of equity will not take cognizance of them, unless facts are alleged sufficient to bring the matter within some acknowledged head of equitable jurisdiction.

Floyd v. Gilbreath et al. [December

APPEAL FROM SCOTT CIRCUIT COURT.

Hon. J. H. Rogers, *Special Circuit Judge.*

A. H. *Garland,* for Appellant.

The whole theory of our Constitution, and the *revenue laws* under it, as to taxes, etc., is to place the subject entirely at the control of the County Court. Every body having cause of complaint, as to assessment and collection of taxes, has his day in this court, subject to appeal, etc., but there is no jurisdiction in equity to enjoin the collection of taxes there assessed. See argument and decision in case of *Nickels vs. Witherspoon,* decided at the last term, and *Clayton vs. Lafargue,* 23 *Ark.,* 137, and cases there cited. And no such special facts as would take this case out of the rule, are averred here—such as fraud, collusion, mistake, etc.—especially as complainants do not aver they made any effort to correct the matter complained of in the court having jurisdiction of the whole matter. *Davis vs. City of Chicago,* 11 *Wall.,* 108, and cases cited; 5 *Id.,* 74, 413; 18 *Ark.,* 381. And there is no such averment here as to immediate action and irreparable damage as would give equity jurisdiction. 11 *Wall. sup.;* 5 *Id. sup.; Jones vs. City,* 25 *Ark.,* 301.

B. T. *Du Val,* for Appellees.

Stephenson, J.—This was a bill to enjoin the collection of certain taxes in Scott county. The bill was presented to the judge of the Circuit Court, in vacation, who granted a temporary restraining order. At the regular April term, 1872, of the Scott county Circuit Court, both parties appeared, when the bill was amended and the defendant interposed a general demurrer to it, which was overruled by the special judge sitting, and further time to answer being refused, because the court was about to adjourn, the injunction was made perpetual and the defendant appealed.

The plaintiffs, who sue for themselves and all other tax-

payers of Scott county, allege that they are severally owners of property subject to taxation. That by an act of the Legislature, approved March 27, 1871, in section 146, it is enacted "that it shall be unlawful for the County Court of any county in this State, unless especially and expressly authorized by some act of the General Assembly, to levy on the taxable property of such county, in any one year, a greater rate per centum than is hereinafter authorized, to-wit: For all ordinary county expenses, not exceeding five mills on the dollar; for road purposes, not exceeding one mill on the dollar; for bridge purposes, not exceeding one mill on the dollar; for support of the poor, not exceeding one mill on the dollar; for the erection or repairing of public buildings, not exceeding two and one-half mills on the dollar; for the payment of the interest on the public debt of such county or the payment of such funded debt or parts thereof as may fall due, with the then current or next succeeding year, such amount as may be actually necessary," etc., etc.; and in and by section 88 of said act, in the proviso of said section, it is enacted "That the collector of each county shall receive county warrants in payment of county taxes; the orders or warrants that may be payable upon presentation of any township, town or city, for their respective taxes." That, at a special term of the County Court, on the 6th day of October, 1871, it being the time fixed by law for holding said special term, the court levied the county tax for the year 1871, as follows: one half of one per cent. for county purposes; one-half of one per cent. for special tax for officers' fees in par funds; one fourth of one per cent. for direct tax for repairing jail; also, one fourth of one per cent. for a court house tax, etc., etc." That so much of said order as provides for the levy of one half of one per cent. for special tax for officers' fees in par funds, is in conflict with the provisions of the act aforesaid; and all that portion of said order levying a tax of two and one half mills for repairing the jail, and one fourth of one per cent for a court house tax is illegal and contrary to law. That there is no

special or general act, of the Legislature, which authorized the County Court to levy the taxes aforesaid; and that the order of the court is illegal, oppressive and void. That defendant, Floyd, threatens, and unless restrained, will proceed to collect and distress the property of plaintiffs, for the collection of said illegal taxes,

Prayer of the bill, that the defendant be restrained from the collection of said illegal tax.

It appears, from the amendments to the bill, that the plaintiffs do not resist the collection of that portion of the levy, which comes within the provisions of the law; and, from the fact, that only that portion which is alleged to be illegal is embraced in the restraining order, it is presumed that the remainder of the levy was paid. They also aver that, under our present system of practice, they have no remedy save in equity. The defendant, Floyd, interposed three causes of demurrer as follows:

*First.* That the court had no jurisdiction of the person of the defendant or the subject matter of the action.

*Second.* That there is a defect of parties, plaintiffs and defendant.

*Third.* That the complaint does not state facts sufficient to constitute a cause of action in chancery.

The first and third causes will be considered together:

*First.* Of the ability of a Court of Chancery to interpose for relief against the collection of an illegal tax.

The demurrer confesses the illegality of the tax, but we do not have to take this technical method to settle that fact. The records of the County Court are made exhibits to the bill, and they clearly show that the court levied a tax wholly unauthorized by law. The right to tax is an attribute of sovereignty, and the mode of its imposition and collection must emanate from the Legislature, and must be strictly pursued. No property can be taxed without this special grant of power, and if the particular amount and purposes are designated in the act, these provisions must be strictly complied with. An

examination of the law, under which the tax complained of was levied, shows conclusively that the County Court had no authority whatever to levy such tax, and consequently their acts, to that extent, at least, are void.

What then is the relief afforded, by our system of judicature, to the citizen, for this threatened invasion of his rights? That it is an injury of a character that relief should be granted, at the hands of some legal tribunal, we will assume at the outset. These appellants, by their demurrer, admit the illegality of the tax, but insist that relief cannot be had in a Court of Chancery. As before intimated, relief should be granted; and, upon the theory that if the appellees cannot have it at law, they are entitled to be heard in Chancery, we will at once proceed to the consideration of the case.

In order to arrive at a satisfactory solution of the questions presented in this case, we deem it necessary to go somewhat at length into the examination of our judicial system, to ascertain clearly the boundaries between the law and Chancery Courts; to observe what, if any, changes have been made in either, by the Legislature, which affect this question.

*Sec.* 6., *Art.* 6 of the Constitution of 1836, is as follows: "Until the General Assembly shall deem it expedient to establish Courts of Chancery, the Circuit Courts shall have jurisdiction in matters of equity, subject to appeal to the Supreme Court, in such manner as may be prescribed by law."

The Legislature, pursuant to this clause of the Constitution, enacted the following law. "The Circuit Court shall exercise Chancery jurisdiction, in this State, in all cases where adequate relief cannot be had at law, and shall, in all things, have power to proceed therein according to the rules, usages and practice of Courts of Chancery, except when it may be otherwise provided by law," etc.

The article of the Constitution, and the act quoted above, have received judicial interpretation at the hands of this court. In *Hempstead vs. Watkins*, 6 *Ark.*, 317, it was held that "this section introduces no new rule, but it is only declara-

tory of the jurisdiction of Courts of Chancery as it stood before its enactment, and our Circuit Courts have jurisdiction over the same subjects as are common to a Court of Chancery, to be exercised according to the known rules of chancery as understood at the time of its passage. *Sec. 6, Art. 6, Const. of Ark.*, provides that the Circuit Courts shall have jurisdiction in matters of equity until the General Assembly shall establish Courts of Chancery; by which is meant such jurisdiction as a Court of Chancery could properly exercise at the time of the adoption of the Constitution.

Having thus determined the jurisdiction of Chancery Courts, as defined by constitutional grants and legislative enactment, they proceed to make the following deductions:

"Where a defense is purely legal and exclusively cognizable in a court of law, the party is bound to defend at law, and cannot have relief in chancery, unless he was deprived of his defense at law, by surprise, accident or mistake, or fraud of the opposite party, unmixed with negligence on his part, or he was ignorant of important facts material to his defense upon the trial at law. When the jurisdiction of Courts of Chancery and courts of common law is concurrent in consequence of courts of common law having enlarged their jurisdiction by their own acts, or its having been enlarged by the Legislature, without prohibitory words, the party may make his election as to his forum."

In *Andrews vs. Fenter*, 1 *Ark.*, 186, this court held that "where the remedy is plain, adequate and complete at law, and the party seeking relief fails to make his defense there, through ignorance or neglect, he will not be relieved in equity; but equity will embrace all cases of legal rights under *peculiar equitable circumstances*, where there does not exist a plain, adequate and complete remedy at law." See, also, *Block vs. Bowman*, 9 *Ark.*, 501.

It will be found, upon investigation, that the jurisdiction of the Chancery Courts have come down to us through all the changes of Constitutions and statutes, singularly free

from change, and remains to-day the same, in all its essential features, as at the adoption of the Constitution of 1836. Hence, the rule of decision adopted in the cases cited are of binding effect upon us. We but affirm the former decisions of this court, and reiterate a principle of chancery jurisdiction, old as that court, that where the applicant for relief, by bill in chancery, has a plain, adequate and complete remedy at law, he will be remanded to that court, and if he fail to negative this proposition by such statement of facts as will enable the court to see clearly its jurisdiction, or present some one of the reasons which will excuse him for not pursuing his remedy at law, his bill is demurrable. This he may do by *showing that he is remediless at law*, or, if a remedy exists, that it is not *plain, adequate and complete*, or is so doubtful in its character as that a reliance upon it might seriously prejudice his rights, or that he has been deprived of his remedy by surprise, accident or mistake, or the fraud of the opposite party, unmixed by negligence on his part, or that he was ignorant of important facts at the trial.

The appellees complain, in their bill, that the County Court of Scott county levied an excessive and illegal tax on their property, prohibited, in terms, by the very act under which they assume to make the levy, and, on the ground of this illegal proceeding, they seek to have the collection thereof enjoined.

We might, perhaps, content ourselves with the simple inquiry, if a legal remedy exists, and if so, whether the appellees have brought themselves within the rule as laid down above, but the gravity of the consequences of such procedure, on the part of the County Court, to the rights of the citizens and tax payers of the State, has induced us to look further and ascertain what remedies exist, at law, for the evil complained of, and their sufficiency to afford complete relief.

The Constitution of 1836, *Sec.* 5, *Art.* 6, provides that the Circuit Courts shall exercise a superintending control over the County Courts, and over justices of the peace in each

county in their respective circuits, and shall have power to issue all necessary writs to carry into effect their general and specific powers. Although, by our present Constitution, Circuit Courts are mere creatures of the Legislature, their jurisdiction remains the same as prior to its adoption until otherwise provided by the Legislature: *Art. 7, Sec. 5 Const.* 1868.

Until the Legislature restricts it, therefore, we hold that the Circuit Courts are clothed with all the powers which were conferred upon them by the Constitution of 1836. Having settled the power of the court to grant relief, let us examine the remedy afforded.

A provision exists, not only in the law under which this levy was made, but in all the revenue laws of the State heretofore passed by the Legislature, providing the manner in which parties who may feel themselves aggrieved may apply to have the appraisement or *valuation* of their property corrected, but we are not aware that any special provision has ever been made to correct an illegal or erroneous *levy* by the County Court. Doubtless the Legislature acted upon the presumption that the court would adhere to the plain and distinct provisions of the law, provided for its government in making the levy; and such a presumption, indulged in its favor, would not seem to be unreasonable, for we hardly expect a functionary, charged with the faithful administration of the law, to be the first to violate it.

This view may seem to militate against the decision in *Randle vs. Williams,* 18 *Ark.,* 380 This court there held that a proceeding by *certiorari* to quash a levy based upon an excessive valuation of property was erroneous. It was not the act of levying of which the party complained, but the act of the officer making the valuation, and the court properly decided that, inasmuch as the law, under which the valuation was made, gave him a specific remedy by appeal to the County Court, he was bound to pursue it; but it does not appear in the act referred to in that case that any remedy is given for an erroneous *levy*; and if it was the intention of the court to

hold that such a remedy did in fact exist, by virtue of the act they cite (*Gould's Digest, Chap.* 148, *Secs.* 35-36,) we must decline to follow it. If we are correct in our conclusions that a party aggrieved by an erroneous *levy* has no remedy by statute, is he remediless at law, in the absence of such special remedy? We think not.

It was held by this court in *Lindsey vs. Lindley*, 20 *Ark.*, 581, that the Circuit Court has a superintending control over County Courts, and appellate jurisdiction from their orders; but where no mode was provided by statute for the exercise of that jurisdiction, the proper remedy is by *certiorari*, and not by appeal. In *Marr, ex parte*, 12 *Ark.*, 84, is was decided that where an inferior court exceeds its jurisdiction, and its acts thereby are void, the Circuit Court has the power, on a proper showing, to remove the proceedings by *certiorari*, and quash them. Upon the same principle in *Derton vs. Boyd*, 21 *Ark.*, 264, it was decided that the Circuit Court has jurisdiction, by writ of *certiorari*, over the judgment of the Probate Court, when the judgment is irregular, and the party interested has no opportunity to appeal. In *Clayton vs. Lafargue*, 23 *Ark.*, 137, it was held, upon a bill involving the legality of a tax, assessed under the Act of 1859, to regulate the construction of levees, upon the ground that the land would not be benefitted by the levee, that the question as to the land being benefitted or not by the levee work, was a fact to be determined by the County Court, and if it erred, the remedy of the owner, if he had any, was by *certiorari*, and not in equity ·to enjoin the collection of the tax. This case was decided, doubtless, upon the ground that as the Act imposing upon the County Court the duty of levying the tax, provided no method of appeal, in the absence of such special provision, the party would be entitled to relief by *certiorari*.

Having, we think, clearly established the fact that a remedy exists at law, for the grievances complained of, in the appellee's bill, we do not wish to be understood as holding that it is exclusive of the jurisdiction of a Chancery Court; for this,

like any other law remedy, must be plain, adequate and complete. It is not the business of the court to point out the particular facts and circumstances which would authorize the party aggrieved to bring his bill for relief; each case must necessarily stand upon its own peculiar merits.

It may safely be assumed that there is no court, however plenary its powers, but will be slow to interfere with the collection of the revenue of a State or municipal corporations, except upon the clearest showing that its jurisdiction is unquestionable. The reasons, for this rule, are based upon sound public policy, and are too obvious to need further mention. Yet, where there is a clear infringement of the rights of a citizen, and no adequate remedy is provided at law for his redress, the interposition of the Chancery Court is not only proper but imperative. It must be borne in mind that our investigation, thus far, has been with a view of ascertaining the remedy, while the collection of the tax is *in fieri*, and we have seen that for an illegal or excessive appraisement, the law provides a specific remedy by appeal to the county board of equalization. Not so, however, where the *levy* is illegal or erroneous. In such case, as we have seen, his remedy was by *certiorari* under the old practice to quash the levy. The Code of Civil Practice, section 519, provides a remedy by mandamus, to compel an executive or ministerial officer to do or omit to do an act, the performance or omission of which is enjoined by law, and section 521, also provides a remedy against a judicial officer for proceeding in a matter outside of his jurisdiction. These Code remedies, however, will be found to be in no wise more efficacious than that by *certiorari*. In none of them can the court look beyond the record to cure any irregularities. They prescribe no new remedy, for these, as well as the writ of *certiorari*, exist at common law, and the remedial powers of the writs, as provided by the Code, are in strict conformity to the common law writs of mandamus and prohibition. The Code neither enlarges or restricts them.

Under the writs of prohibition or *certiorari*, the court may

revise the proceedings of the County Court, and if, by the record, it appears that the court has proceeded in a matter outside of its jurisdiction or in excess of it, the proceedings may be stayed or quashed.

This review of the action of the court may be asked by any one or more of the citizens or tax payers of a county, and if the proceedings are conducted in a manner beyond the powers of a court, they will, where the writ of prohibition is used, be inhibited to the extent of the illegality, or if by *certiorari*, the whole proceedings may be quashed, not as it effects the rights of the petitioners merely, but the whole levy. But when it is desired to correct an error which exists *de hors* the record, as where the levy, on the face of the proceedings to impose it, is a valid lien on land, and extrinsic evidence is required to show its invalidity, neither the writ of *certiorari* or prohibition are of any value, for as stated before, they can only reach errors which appear of record, and there exists no remedy at law for the *prevention* of such an evil. It necessarily follows, therefore, in such case, that a court of equity will interpose to prevent a multiplicity of suits, irreparable injury, or a cloud on the title to real estate; and where the tax is levied on real estate, the chancellor would not require the petitioner for an injunction to do more than allege such facts in his bill as will show that his remedy at law is inadequate to afford relief; for, under the peculiar statutes of our State as to the effect of a tax deed as evidence of title, such an instrument would certainly constitute "a cloud on title to real estate." More strictness, however, will be required where the levy is upon personal property.

To invoke the aid of chancery to restrain the collection of a tax, regular on its face, it must be shown that irreparable injury or multiplicity of suits will result to the tax payer, a much more difficult matter than to demonstrate the nature and extent of a cloud on title to land.

We have seen that the writs of *certiorari* and prohibition are the only means by which a threatened distress and sale of

property, for an illegal tax, may be prevented, and these reme-
dies are effectual where the illegality of the tax appears on
the face of the proceedings to impose it.   Yet there exists
other remedies for injuries resulting from the *sale of property
for taxes.*

Where the error or illegality *appears of record,* and the
tax payer does not choose to avail himself of his remedy by
*certiorari* or prohibition to *prevent* the evil, he may have his
action of trespass against the officer for the seizure of his
property; and replevin will, also, lie to recover personal
property seized or sold, in whosesoever hands it may be.
Or, where the proceedings imposing the tax are regular on
their face, and the tax be paid under protest, to avoid sale,
he may have his action to recover the money so paid.   Ordi-
narily the sale of *personalty* for taxes creates no hardship
which cannot be fully compensated in damages by an action
of trespass, or to recover back the money if paid under pro-
test, and, as we before said, a Court of Chancery will be slow
to grant relief, unless under peculiar and equitable circum-
stances, which must be clearly shown.

We have examined at some length the authorities of other
States as to the circumstances under which the chancellor has
interposed to grant relief against excessive and illegal taxa-
tion, and although the rule is not uniform, we have no diffi-
culty in ascertaining the weight of opinion, where the ques-
tion is based upon the general powers of a Court of Chancery,
unaffected by local statutes.

In the case of *Cook County vs. The Chicago, Burlington and
Quincy R. R.,* 35 *Ill.,* 460, which was a case involving the
legality of a tax levied on the company's property, the court
say:   " We have carefully examined the former decisions of
this court in regard to the asserted right of bringing a bill
in equity to restrain the collection of a tax illegally assessed,
and we have been unable to find any decisions asserting
equitable jurisdiction in such case without regard to special
circumstances;" and in commenting upon those cases where

the court had taken jurisdiction, it says that the question of jurisdiction was either not raised or the case presented special equitable circumstances, and concludes as follows: "While we consider it settled law that a court of equity will never entertain a bill to restrain the collection of a tax, excepting in cases where the tax is unauthorized by law, or where it is assessed upon property not subject to taxation, this court has never held that it would take jurisdiction in such excepted cases, without special circumstances showing that the collection of the tax would be likely to produce irreparable injury or cause a multiplicity of suits. Ordinarily, a party of whom a tax is illegally collected has an ample remedy at law by an action of trespass against the officer collecting it, or by an action of assumpsit to recover back the money paid." The same rule obtains in New York. In *Haywood vs. The City of Buffalo*, 14 N. Y., 534, the court held that while an erroneous or illegal assessment may be reviewed by the courts by *certiorari*, the general rule is that a court of equity will not entertain jurisdiction except to prevent a multiplicity of suits, or irreparable injury; or where the assessment, on the face of the proceedings to impose it, is a valid lien on the land, and extrinsic evidence is required to show its invalidity. The doctrine established by the decisions is substantially this: That if the proceeedings are void upon their face, they form no cloud upon title and no ground of interference by a court of equity; and if they are not void upon their face, but merely voidable or irregular, a court of equity will not take cognizance of them, unless facts are alleged sufficient to bring the matter clearly within some acknowledged head of equity jurisdiction. This is a sound and salutary rule which should be steadily adhered to upon considerations of public interest and convenience, if no other. It is not the business of courts to furnish new remedies to parties aggrieved, even though existing ones are found inadequate to afford perfect protection or redress. That falls more properly within the province of the legislature. But if they

had the power they would hesitate before extending their equitable jurisdiction over all the acts of these inferior bodies, and allowing every one assessed to come in and litigate as to the validity of his tax before he should be required to pay it, who could allege some error in making the assessment.

In *Dows vs. The City of Chicago*, 11 *Wallace*, 108, which was a bill to restrain the collection of an illegal tax, Mr. Justice Field said: "The illegality of the tax and the threatened sale of the property for its payment, constitute of themselves alone no ground for such interposition. There must be some special circumstances attending a threatened injury of this kind, distinguishing it from a common trespass, and bring the case under some recognized head of equity jurisdiction before the remedy of injunction can be invoked. It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes should be interfered with as little as possible; any delay in the proceedings of the officers, upon whom devolves the duty of collecting the taxes, may derange the operations of government and thereby cause serious detriment to the public. No court of equity, therefore, will allow its injunction to issue to restrain their action except where it may be necessary to protect the rights of the citizen whose property is taxed, and he has no adequate remedy by the ordinary processes of the law. It must appear that the enforcement of the tax would lead to a multiplicity of suits or produce irreparable injury, or where the property is real estate, throw a cloud upon the title of the complainant before the aid of a court of equity can be invoked."

The Supreme Court of Connecticut, in *Dodd vs. The City of Hartford*, 25 *Conn.*, 232, say, that a bill of injunction will not lie to restrain the collection of an illegal tax. If the proceedings are illegal and void, an action at law will lie to recover all the damages which may arise from the levy; and

the question of the legality of the levy will then be tried in the appropriate forum, a court of law.   There are also reasons of public policy, founded on the necessity of the speedy collection of the taxes, which ought to prevent a Court of Chancery from suspending these proceedings, except upon the clearest grounds.   Mr. Blackwell, in his Treatise on Tax Titles, 555-568, assumes the contrary of the view taken in the foregoing authorities, basing his theory upon the case of *Burnet vs. City of Cincinnati*, 3 *Ohio R.*, and asserts that the weight of authority inclines to the position assumed by the court in that case.   We have thought it proper to investigate the cases in which the opposite view has been taken from that which is assumed in the cases above referred to, and especialy when it is contended by Mr. Blackwell that it is against the weight of authority.

We think a careful examination of *Burnet vs. Cincinnati*, will show that the court rested its jurisdiction upon one of the well established heads of equity, for the sale of the property was enjoined upon the express ground that it would cloud the title to real property, and the doubt as to whether title passed by the sale would so confuse titles to real estate as to authorize a court of equity to stay the sale where upon examination it was found that the assessment was void.   In Wisconsin the same rule obtains.   The court, in *Dean vs. City of Madison*, 9 *Wis.*, 406, referring to *Burnet vs. Cincinnati* with approbation, adopt the same reasoning.   But it will be seen that relief was granted in *Dean vs. City of Madison*, more on account of the inadequate remedy at law than because the title was subject to a cloud, although the latter reason was assigned.   *Sec.* 34, *Chap.* 84, *R. S.*, of the State of Wisconsin, provides for the bringing of an action by the holder of the legal title to real estate, in possession, against any other person " setting up a claim thereto," and a statute precisely similar existed in Ohio when *Burnet vs. Cincinnati* was decided.

The existence of these statutory remedies in the States

44

whence we derive the decisions upon which Mr. Blackwell rests his theory, very materially weakens their force with us.

It will readily be seen that the legislatures of those States, when they adopted the laws referred to, were attempting to rid themselves of that rule in chancery which prevents a party in possession from bringing his bill in the Chancellor's Court, *quia timet*, before his possession was threatened or disturbed. But, as was said in *Dean vs. City of Madison*, the statute was inadequate to give complete relief against the holder of a tax certificate or deed; for to compel a party to lie by until the purchaser at a tax sale had obtained such rights under the sale as to amount to the setting up of an adverse claim, would but amount to a prohibition to the holder of the legal title against taking any steps until the mischief had been done.

Indeed, it would seem that a Court of Chancery might well interpose for relief *against* the statute; for in all those cases involving the constitutionality of the law, under which an assessment was made, where its illegality does not appear on the face of the proceedings, the tax payer who desires to test the validity of the tax must imperil his title to do so. Nor would such interposition be a stretch of equitable jurisdiction, for the applicant for relief would not be remitted to a court of law unless his remedy there was plain, adequate and complete. In Iowa the courts exercise equitable jurisdiction to relieve against an illegal tax. The leading case, *Macklot vs. City of Davenport*, 17 *Iowa*, in that State, upon which subsequent decisions in support of equitable jurisdiction rest, is so clear an exposition of the law that we quote from it at length. The court say: "The precise question presented in this case has not been determined by the court. The case of *Morford vs. Unger*, 8 *Iowa*, 82, decided that an action of replevin might be maintained by a person whose property had been seized to satisfy a tax levied under an unconstitutional law; or, in other words, where there was no authority to levy the tax, a warrant for its collection would not justify an offi-

cer in seizing property to satisfy it, and, of course, the owner of property seized under such a tax warrant could maintain replevin for it. The case of *Morford vs. Unger* was followed in the case of *Langworthy vs. The City of Dubuque*, 13 *Iowa*, 86.

In the present case there is no question but the city of Davenport had jurisdiction and authority to levy a tax upon the property of the plaintiff in the time and manner the tax was levied. It is claimed, however, and so found that the plaintiff was over-assessed. This case is, therefore, one of unjust over-assessment, and is, to the extent of such over-assessment, clearly erroneous. There is, however, a clear distinction between such a case and one of assessment without any authority—such as an assessment made under an unconstitutional law, or the assessment of property *for which the law has made no provisions for assessing*, or has expressly exempted from taxation. The distinction is the same in effect, and just as clear as that between an erroneous judgment of a court having jurisdiction of the person and subject matter, and a court having neither. And to illustrate further, a tax warrant, regular on its face, issued for the collection of a tax, levied under such erroneous assessment, would afford protection to the officer serving it, while under an unconstitutional law, or without authority of law, would afford no protection whatever. The remedy afforded by law to a party whose property is seized to satisfy a tax levied under an unconstitutional law, or levied without authority, under the law to levy, is clear. He may bring replevin for his property seized to satisfy such tax; or *when matters of equitable cognizance* are also involved, he may restrain their collection, or he may doubtless make the collector personally liable for damages." And in conclusion the court say : "There is another view of this case, which, perhaps, under close examination, might be found equally decisive, and that is, that a party would have his remedy at law against the assessor, or the city, for the recovery of any money paid out for taxes

wrongfully assessed; and having such adequate remedy at law, could not, of course, resort to equity. Yet the court, following this as the leading case on the subject, have held that a bill would lie to enjoin a tax, solely on the ground of its illegality, apparently assuming that position to be held in this case."

In *Litchfield vs. The County of Polk,* 18 *Iowa,* 72, the court say : "When the plaintiff is the undisputed owner of land, he is frequently allowed to file a bill to restrain an illegal sale thereof for taxes, grounding his right to relief upon the unauthorized proceedings of the public officer. And even in such case, there are not wanting respectable authorities that relief cannot be had by bill in chancery to enjoin the sale." In this case the court seemed either to have overlooked the very careful distinction made in the case of *Macklot vs. City of Davenport,* as to the special equitable circumstances, which alone would, according to that case, give the Chancery Court jurisdiction, and those cases when the relief prayed was based upon the mere illegality of the proceedings, or to have disregarded the rule of the case entirely. At all events, if the court intended to follow the rule as laid down in *Macklot vs. City of Davenport,* we are forced to believe that the special equitable circumstances necessary to confer the jurisdiction existed; but if they intended to enlarge the jurisdiction of the Court of Chancery, certainly no satisfactory reason is given therefor.

In Indiana the courts seem to have uniformly taken jurisdiction to grant relief against the collection of an illegal tax, but in none of the cases does the question of jurisdiction seem to be raised; but in *Jones vs. Sumner,* 27 *Ind.,* 510, the court say, in passing upon the question of illegal tax : " Where a party appeals to a court of equity for relief, and invokes its extraordinary writ of injunction, he must rely upon some substantial equity. The decisions of this court, heretofore, have gone to the utmost extent of authority in restraining the collection of taxes."

In Massachusetts, Courts of Chancery take jurisdiction in all cases to restrain the collection of erroneous or illegal taxes, but such jurisdiction is derived from a special statute (*Gen'l Stat.*, ch. 18, *sec.* 79), which provides that "immediate resort can be had by a suit or petition to the court, sitting in chancery, to hear and determine concerning the validity of a proposed tax, or any violation or abuse of the legal right and power of raising taxes, and assessing them on the inhabitants, etc." Prior to the passage of this act, those complaining of such excessive or illegal taxation, were uniformly remitted to their relief at law.

Although the rule of decision, as to when a Court of Equity will interpose to restrain the collection of taxes, does not seem to be uniform in the several States, we think, in the absence of special statutes conferring jurisdiction on the Courts of Chancery, and where the question has been considered upon grounds of equity jurisdiction purely, the weight of authority, and especially the later and better considered opinion is in harmony with the rule as we have deduced it from an examination of our statutes, and former decisions of this court. When the statutes provide the mode of appeal from the judgments and orders of an inferior court, that method must be adopted in all cases where the court was acting within the scope of its jurisdiction; and in all cases where no appeal has been provided for, or the court is proceeding in a matter in excess of, or beyond the limits of its jurisdiction, so that its proceedings are so erroneous as to preclude an appeal, the remedy is by *certiorari* or prohibition. There may arise cases where even this resort would be inadequate to afford complete relief. In such cases, before the applicant would be entitled to relief by injunction, he must show the inadequacy of his law remedy, in order to enable the chancellor to ascertain clearly his jurisdiction to interpose for relief.

In the case at bar it is denied that a legal remedy exists. This, we have shown, is not the case. Appellees have shown clearly that the action of the County Court was illegal, and

the illegality of its act appears fully from the record. Their remedy at law was full, adequate and complete, and they show no excuse for not pursuing it. A review of the proceedings by *certiorari* would have disclosed the errors, and quashed the levy; or a writ of prohibition would have restrained the court from making the illegal levy complained of. Instead of an application for an injunction, if these appellees had presented a petition for either of the law writs mentioned, not only their own relief could have been secured, but also that of all the other tax-payers.

The appelles allege that if the injunction is not granted, it will involve the tax-payers of Scott county in a multitude of suits against the sheriff, to prevent the collection of this tax. Exactly contrary is the case. A suit at law, on the part of any one citizen against the sheriff, to *prevent* the collection under the levy, would have resulted in relief to all.

Having disposed of the causes of demurrer, which present the material issues in this case, we do not deem it necessary to consider the second cause.

It is argued that in these times of telegraphs, railroads and steam, that to insure immunity from wrongs and hardships under the law, the use of the extraordinary writ of injunction should be freely used. The bare statement of this proposition shows its weakness. If, indeed, we are fallen upon such times as that the citizen is either unwilling to brook the law's delay, or is unwilling to trust it to afford him redress, when the mode is pointed out to him, he may manifest that spirit in the popular branch of the government in the shape of law or decree authorizing the courts to disregard these enactments for the government of the judiciary, which are bottomed upon the wisdom and experience of ages, and arbitrarily settle the disputes of the country upon the progressive theory suggested by counsel. But so long as the courts are bound by sworn allegiance to the Constitution and laws of the State as they have been interpreted by the wisdom and experience of the eminent jurists who have gone before us, such a suggestion can but meet with disfavor.

We would suggest to counsel that the apparent necessity for the intervention of the restraining powers of a Court of Chancery, might be based upon quite a different reason, and one which, in time, will, it is hoped, cure itself.

We are but lately emerged from an internal convulsion, which left our government and laws in a state of disorder and confusion ; and, in the process used to restore their efficacy for the purposes for which governments are intended, attended, as those efforts must of necessity be, with embarrassing questions, growing out of our late troubles, many cases of individual hardships have arisen which seem to require the interfering hand of extraordinary power, and from the frequency of their use, it would seem the citizen was not unwilling to avail himself, and the courts not slow to give the relief. Doubtless, the writ, in many cases, was wisely interposed ; but from the number which seem to be found crowding the records of our courts, it would appear that it has almost become the ordinary mode of instituting a suit for the redress of a civil injury.

It has been said by counsel, that to the courts of the country, more than any thing else, does the public look for the stability and perpetuity of good government, and the protection of the rights of the citizens thereof.   If this be true, can the courts better aid in the restoration and protection of those than by steadily adhering to the ancient and well established usages which time and experience have demonstrated to be most conducive to the desired end.   We do not feel warranted in making shipwreck of time-honored rules for the government of courts, to meet hardships growing out of a disordered state of society, but rather by applying them vigorously to the malady, insure its speedy cure.

The decree of the Scott County Circuit Court, overruling the demurrer to the bill on the first and third causes assigned, is reversed, and the cause remanded with instructions to dismiss the bill for want of equity.

GREGG, J., dissenting says:

James C. Gilbreath and twelve others, in behalf of themselves and all other tax payers of Scott county, presented their bill of complaint against the appellant, to enjoin him from the collection of an excess of one-fourth of one per cent. tax for public buildings, and one-half of one per cent. in par funds, for officers' fees.

The complainants allege that they are severally the owners of considerable real and personal estate, liable to taxation in said county. They recite the various provisions of law, authorizing the County Court to assess taxes, and aver, that at the time and place fixed by law, said County Court met and made an assessment for the year 1871; that said court assessed the full amount allowed by law, for county purposes and for public buildings, and over said amounts they assessed and ordered collected one-half of one per cent., in par funds, to pay officers' fees, and one-fourth of one per cent. for a jail tax, which sums, among the legal taxes, were extended on the tax-books, and charged to them, and as an exhibit of the sum charged to each, they refer to the tax book and the sums carried out under the heads of such taxes; that the said tax books, with these illegal taxes thereon, has been made up in the usual form of law, with an execution thereto attached, and delivered to said appellant, as such sheriff and collector of Scott county, and he is proceeding to collect the whole of the tax on said book, that which is illegal, as well as that which is legal; that they are ready and willing, and offer to pay all the taxes legally assessed; that if said illegal taxes are not paid, said appellant threatens to, and he will, sell their property, unless he is restrained from so doing by an order of court; that said illegal levy is oppressive upon appellees, and that they ought not to be subject to the expense and annoyance of bringing a multitude of suits to prevent their property from being levied upon and sold for such illegal assessments. That under the present system of practice, in this State, they have no remedy, save by the exercise of the equity

powers of the court, to restrain the appellant from carrying into effect the oppressive and illegal orders of the County Court, and closed with the usual prayer of injunction.

There is no question but the law limited the County Court in their assessment for public buildings to one-fourth of one per cent., and in this instance they attempted to levy double that, and their attempt to assess one-half of one per cent. for officers' fees, all likewise agree, was without the shadow of authority.

Our only disagreement is upon the power of a court of equity to grant relief in such cases, and I may further state that upon many of the abstract propositions of law announced by the majority, we do not disagree, and so far as such legal propositions tend to sustain the conclusions at which they have arrived, I am willing to concede their full force and extent.

I am willing to argue this case upon their strongest grounds, and grant all that is claimed by Mr. Justice Field, in the well known case of Dows against the city of Chicago, 11 *Wal.*, 109, and few opinions in able courts have dealt in more general terms, or declined relief in stronger cases. He says: "No court of equity will, therefore, allow its injunction to issue to restrain their action, except where it may be necessary to *protect the rights of the citizen*, whose property is taxed, and he has no adequate remedy by the ordinary process of the law. It must appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or where the property is real estate, throw a cloud upon the title of the complainant before the aid of a court of equity can be invoked."

Now the majority say that each case must fall under some one of these heads of equity jurisprudence; and at present we assume to face them upon this ground.

Some decisions favor their conclusions, if we do not consider our peculiar statutes, and different judges take different views upon this, as they necessarily will upon all important

questions litigated in so many forms, arising upon statutes having the same object, but widely differing in detail, and involving most important interests.  And by far the greater number of apparent conflicts are attributable to the different judicial systems in which they are found.  It is well known that in the various States of the Union our revenue systems are like the laws of descent, dower or homestead, fashioned after the changing will of a Legislature, and subject to all the uncertainty, dubiety and imperfections of hasty action, and we cannot arrive at a correct conclusion without a careful consideration of our own tax laws, and a clear view of our system of rights and remedies as they depend upon these revenue statutes.  Thus considering, if this case comes under any of the above heads of equity jurisdiction, the judgment should be affirmed, we will consider them.

The ownership of real as well as personal property is averred; the assessment and the proceedings to collect in the forms of law are alleged.

It seems these citizens should not, under all circumstances, be compelled to pay this illegal assessment, which might involve the sacrifice of the very lands they are justly seeking to protect.  The sheriff was proceeding to sell the lands, under the color of law, at the time and in the manner prescribed for the non-payment of taxes.

And under the execution annexed to the tax-book, he would collect taxes, penalty and costs, and the purchaser would receive a certificate for title.  See *Secs.* 75, 98, 100, 105, *Rev. Act*, 1871.

Then a redemption can only be had (*Sec.* 116.) by the owner depositing with the county treasurer an amount of money equal to that for which the land was sold for tax, penalty and costs and the taxes subsequently paid thereon, together with interest, and one hundred per centum penalty on the whole amount so paid.

If such deposit is not made within two years, under section 125, the county clerk shall execute a deed to the pur-

chaser or his assigns for the whole tract of land or lot sold, which deed, in the usual form, shall be acknowledged and recorded, and shall vest in the grantee, his heirs and assigns, the title in the real estate described, and shall be received in all courts and places where such title is involved as conclusive evidence that each and every act and thing required to be done, under the provisions of the revenue law, had been done; and the party offering such deed shall not be required to produce the assessment, appraisement, notice or sale, or any other thing, as evidence to sustain such title, and the party controverting such deed can only show that the land conveyed was not subject to taxation.

*Second.* That the taxes due, had been paid before the sale.

*Third.* That such land had been duly redeemed according to law, before the execution of the deed; or

*Fourth.* That the land was the property of a *feme coverte*, minor, insane person, or one in imprisonment at the date of the sale and deed.

Now it will be readily seen by examining the provisions of these sections, that the statute gives no *legal* remedy to stop proceedings, or to stop or set aside a sale because of any oppressive or illegal levy or collection, but prescribes a direct channel through which acts shall proceed until an absolute deed is made for the lands, by one acting in the forms of, and under color of law, and by these statutes, this deed is not only relieved from reciting the appraisement, levy, notice, sale, etc., but it is expressly provided that the holder shall not be required to prove anything of the kind, and that his deed shall be *conclusive evidence*, unless the other party affirmatively show that the lands could not be taxed; that the tax or redemption money was paid, or the owner, under legal disability; thus cutting off, not merely defenses for informality, but for illegality, extortions and other gross wrongs. In this case depriving the parties of all redress, unless they first paid out their money. And can it be said such a deed, outstanding under these statutes, is no cloud upon the occupant's title?

And it is no answer, in this case, to say, the complainants had personal property out of which the tax could have been made, because, our statutes, so unlike most others, that preserve real estate, (section 92), expressly prohibit the sheriff from making a distress and sale of personal property for any taxes due on land, and requires such taxes to be made only out of the lands; how then shall the owner avoid the shadow overhanging his title? He, being in possession, cannot sue in ejectment, and of course it cannot be insisted that he could file a bill to remove the cloud from the title, because equity will never entertain such a bill, unless there is a real cloud existing, and to admit that, at any time, such cloud does arise upon his title, would be to admit all the most persistent, against tax injunctions, have ever said was necessary to authorize a chancellor to interpose by the prohibitory process of injunction.

And further, section 123, provides that "all actions to test the validity of any proceeding in the appraisement, assessment or levying of taxes upon any land or lot or part thereof, etc., shall be commenced within two years from date of sale and not afterwards." Thus making the limitation to all suits absolute upon the expiration of the period of redemption, a very remarkable limitation of only two years for real estate actions.

Beyond all this, section 178, provides that, "upon the sale of any land or town or city lot, or part thereof for taxes then due, if such sale should prove invalid on account of any informality in the proceeding of any officer having any duty to perform in relation thereto, the purchaser at such sale, shall be entitled to receive from the proprietor of such land or land or lot, the amount of taxes, interest, penalties and costs of advertising with interest thereon from the payment thereof, and the amount of taxes paid thereon by the purchaser, subsequent to such sale, and such land or lot shall be bound for the payment thereof," etc. Here it is declared that certain sales, are so far in violation of law that the courts must

set them aside, yet the proprietor must pay upon a levy and collection not valid in law, or he must forfeit and pay all these costs and penalties, which are made a lien upon his land. This is creating a very striking cloud upon his title, as well as showing a very inadequate remedy at law. Such provisions as cited—two years of limitation, no redemption, without paying double the amount, no recitals required in a deed, the deed made absolute and by law declared conclusive evidence in all courts, seem to becloud the title so a chancellor might restrain, where the attempted collection is clearly illegal, as it is conceded to be in this case; hence we are of opinion the court had jurisdiction.

We will refer to some good authority, but not attempt to notice numerous decisions that have been rendered sustaining this view.

Mr. Hilliard, in his work on injunctions says: "An execution sale may be enjoined where it would cause a cloud on the title of the complainant," (*page* 234;) and in laying down what he says has been held to be the law, on *page* 455, he says: "and though tax deeds of the land would be void, yet they would be a cloud on the title, and the issuing them may be restrained."

Mr. Blackwell, in his work on tax titles, *second edition, page* 481, speaking of an officer proceeding to sell without sufficient authority says: "The execution of the power under such circumstances is calculated to cast a cloud upon the title of the owner, and to render it unmarketable in the equitable sense of that term. * * * * When the owner is in possession of the land at the time illegal proceeding is about to take place, he has no remedy in a court of law which would indemnify him for the threatened wrong to his title. * * * * Surely under such circumstances a court of equity would grant relief upon the familiar principles of action in that court." Upon this and succeeding pages this able author reviews many decisions, and announces the doctrine that courts of equity have jurisdiction to enjoin the collection of illegal taxes.

Mr. Dillon, in his valuable work on municipal corporations, *page* 682 *section* 731 says: "In this country the right of property holders or taxable inhabitants to resort to equity to restrain municipal corporations and their officers from transcending their lawful powers, or violating their legal duties, in any mode which will injuriously affect the taxpayers, such as   *   *   *   * levying and collecting void and illegal taxes and assessments, under the circumstances, presently to be explained, has been affirmed or recognized in numerous cases, in many of the States. *It is the prevailing doctrine on this subject,*" etc.

Mr. High, in his very late work on injunctions, *section* 367, says: "The most generally recognized exception to the rule that equity will not interfere with the collection of the revenue, because of defects or illegalities in the proceedings, is in cases where the proceedings, if not enjoined, would result in clouding the title to real estate.   *   *   * So, too, where a city charter declares *a tax a lien upon the premises* on which it is assessed, *the tax, if illegal, creates such a cloud upon the title as to warrant an injunction*   *   *   * and the jurisdiction to thus interfere for the prevention of a cloud upon title, is regarded as pertaining to the well settled powers of equity, which will interfere to prevent such a cloud as tends to diminish the value of the property or cast a doubt upon the title." And in the next section, when speaking of proceedings, by law, void on their face, he says: "But where by statute a tax deed is made *prima facie* evidence of the regularity of all the proceedings incident to the assessment and sale, *if the tax has been imposed contrary to law, such a cloud upon the title will result as to warrant the interference of equity.*" In the case at bar, no one here questions the fact that the tax was imposed contrary to law, and the deed would not only be *prima facie* but conclusive.

Irreparable injury justifies equitable jurisdiction. It is not the great extent of the injury that is known as irreparable, but an injury that cannot be redressed or properly estima-

ted and relieved against, and if the costs, penalties and illegal taxes assessed against the appellees, could not have all been relieved against by process of law; and, under these peculiar statutes, I incline to that opinion, this would afford grounds for equitable relief.

To prevent a multiplicity of suits, taking the propositions inversely as above stated, is the third head of equitable jurisdiction, and this has been presented in so many leading cases that we do not feel called upon to re-argue it. In *Burr vs. Denison*, 17 *N. H.*, 170, seventeen persons sued for all the taxpayers of the district, and had a judgment enjoined, and also the tax to pay it. In *Smith vs. Swamstedt*, 16 *How.*, a few Methodist preachers sued for themselves and many others, etc. In *Page vs. The Inhabitants of Halifax*, 12 *Cush.* (*Mass.*), 410, a few tax-payers sued for all, and obtained an injunction, etc. See *Howard et al. vs. Mayor of Linn*, 1 *Allen*, 103. In *Nevett vs. Galispe*, 1 *How.* (*Miss.*), the court said: "Courts of equity will interfere to prevent a multiplicity of suits where the subject matter of contest is held by one individual in opposition to a number of persons who controvert his right, and who hold separate and distinct interests, depending upon a common source." But a reference to the elementary works does away with the necessity of referring to numerous decisions.

The last general head is the inadequacy of the remedy at law. A careful review of the authorities will show that where a proceeding is being had for the sale of lands occupied by a tax-payer, any remedy at law is almost universally held to be inadequate, because, even an illegal levy so far creates a cloud upon the title as to injure the value, and especially is this so where a deed by statute is made *prima facie* evidence of the regularity of the proceedings, and the party in possession has no legal remedy to remove the cloud from his title. And our peculiar laws declare the deed conclusive evidence in all courts; that everything has been done necessary to a perfect title, and forbids the proper owner making proof to the con-

trary, except proof that the lands were not taxable; that the taxes were unpaid, or the owner under legal disabilities. And these statutes give no remedy against illegal assessments, prescribe no mode of procedure to get rid of illegal or fraudulent action on the part of tax-officers. Then, with no mode of redress pointed out by statute, the owner is forced to pay and risk a suit for a return of his money, or his lands will be sold, a cloud thrown upon his title, or he would be compelled to pay out his money and take the risk and pay the expense of a suit to recover it back. The case of *Bull et al. vs. Reed, et al., 13 Gratten*, 86, is so full and direct upon all the main points in this case, that a reference thereto ought to have been sufficient argument.

As a general rule, courts should not enjoin the collection of State taxes, unless the complainants show a case of great wrong, without adequate remedy at law. Municipal taxes, and other local assessments are not so highly favored, and some distinctions are made between personal and real estate— the nature of the former renders it easily marketable, and its loss can be justly estimated in damages.

Real estate is fixed; the title depends more upon decrees, deeds and other writings; its value may be affected by liens and by local surroundings, and a deed in form (if not technichally valid), outstanding, may lessen its worth, and especially so when such deed has been executed in the usual course of law, and hence the necessity for the rule allowing a court of equity to restrain where the law has prescribed no adequate remedy. *Burnett vs. Cincinnati*, 3 *Hammond*, 73; *Vanoree et al. vs. Justices of the Inferior Court*, 27 *Georgia*, 356; *Osborn vs. U. S. Bank*, 9 *Pet.*, 739; *Story's Eq. Pl.*, secs. 97, 112, 126; *Civil Code*, sec. 33.