SANDERS *v.* GREEN.

4-8605                         214 S. W. 2d 67

Opinion delivered October 18, 1948.

944

*Price Dickson,* for appellant.

*Rex W. Perkins* and *G. T. Sullins,* for appellee.

WINE, J. The appellants who are the mayor and aldermen of the City of Fayetteville and election commissioners and sheriff of Washington county, Arkansas, bring this appeal from an order of the Chancery Court of that county enjoining the appellants J. C. Parks, J. S. Bates and S. B. Hanna as such election commissioners from "including on the ballot for the general or any special election to be held in the City of Fayetteville" the question of the adoption or rejection of an ordinance numbered 930, hereinafter discussed, or "from delivering any such ballots containing the matter aforesaid." The appellant, Bruce Crider, Sheriff, was also in said order "restrained and enjoined from including in his proclamation of election to be held on April 6, 1948, or special election notice of election as to Ordinance No. 930."

The appellees are members of the "Board of Control" of the City Hospital located in the City of Fayetteville, and alleged in their original complaint in equity that "each of them is a *bona fide* resident citizen, and qualified elector of the City of Fayetteville, Arkansas, and that they (filed and prosecuted) this suit as members of said Board of Control of said City Hospital, and also as citizens and qualified electors of the City of Fayetteville, Washington county, Arkansas."

On the 17th day of June, 1947, prior to the filing of this suit, an election was held in the City of Fayetteville, to determine the will of the legal electors on the question of whether the city should issue its bonds in the sum of $75,000, the proceeds to be used *"for the purpose of constructing additions to, and remodeling City Hospital."* The proposal for this bond issue received a majority of

the votes cast at said election and thereafter bonds in the sum of $75,000 were issued and sold by the City of Fayetteville (for the specific purpose for which they had been voted) and the proceeds derived from the sale of these bonds are now held by the City of Fayetteville in trust *for the purpose for which they were voted and sold.* There is no controversy to this point in the proceeding had and done thus far.

On the second day of February, 1948, following the election and sale of these bonds the City Council of the City of Fayetteville passed and published a certain ordinance being numbered 930, the title of which reads as follows:

"An ordinance submitting to the qualified electors of the City of Fayetteville, the question of the expenditure of seventy-five thousand ($75,000) being the proceeds of the sale of the Fayetteville hospital bonds directing the expenditure of said proceeds for hospital purposes by the City of Fayetteville, either independently or in connection and coöperation with the County of Washington and the University of Arkansas or either of them and either in connection with or independent of the present hospital known as the City Hospital, and for other purposes."

In the body of this Ordinance No. 930, the bonds previously sold are referred to as *ad valorem* bonds and said ordinance further recites:

"Whereas said bond were sold by the City of Fayetteville, Arkansas, and no part of the proceeds of said sale have been expended, and whereas conditions have arisen which were not contemplated or foreseen at the time the question was submitted to the qualified electors of the City of Fayetteville, Arkansas, and

"Whereas the City of Fayetteville has no assurance that a Federal grant supplementing the proceeds of the sale of the hospital bonds will be granted, and

"Whereas the City of Fayetteville entertains serious doubts that by the expenditure of the unsupplemented proceeds of sale, the present City Hospital can be remodeled and added to in a satisfactory manner, and

"Whereas the City of Fayetteville has no assurance that the expenditure of the proceeds of the sale of the hospital bonds in the present location can be justified."

At this juncture appellees filed their complaint in equity praying that the court immediately issue its restraining order to each and every one of the defendants (appellants here) commanding them and each of them to, at once, desist and refrain from doing any matter or thing whatever in furtherance of the provisions of said Ordinance No. 930. Appellants filed a demurrer to this complaint setting forth:

"(1) That said complaint does not state sufficient facts to constitute a cause of action.

"(2) That said complaint does not state sufficient facts to constitute a cause of action within the jurisdiction of this court."

A temporary restraining order was first issued by the court, followed on the 17th day of March, 1948, by a final decree making the temporary order permanent on the basis of the right of equity to prevent a multiplicity of suits. The appellants elected to stand on their demurrer, refusing to plead further,

We think the Chancery Court did have jurisdiction and did not err in issuing a temporary injunction, in overruling appellants' demurrer, nor in making said injunction permanent.

While it is a well settled rule of law that equity will, ordinarily, not restrain a municipal corporation in the exercise of its legislative power, there are, however, notable exceptions to this rule. 43 Corpus Juris Secundum, § 118, p. 649: "There are exceptions, however, to this doctrine of noninterference, as where the mere passage of the ordinance would immediately occasion, or would be followed by, some irreparable loss or injury beyond the power of redress by subsequent judicial proceedings, or where it would cause a multiplicity of suits . . . "

Joyce on Injunctions, Vol. I, p. 802, § 518, treats of this exception: "To prevent a multiplicity of suits is a

favorite ground for granting injunctive relief in courts of equity. The object to be attained by a resort to a court of equity in such cases is to obtain a final determination of the particular right in controversy, as between all the parties concerned, by a single issue, instead of leaving the right open to litigation by separate suits brought by each of the parties in interest . . . ''

The foregoing rule was adopted by this Court in two early Arkansas cases, *Floyd* v. *Gilbreath, et al.,* 27 Ark. 675, and *Greedup, et al.,* v. *Franklin County, et al.,* 30 Ark. 101. This rule has been followed not only in this, but in other jurisdictions: *Second National Bank of Titusville, Pennsylvania,* v. *Caldwell, et al.,* 13 Fed. 429, and *Fairley* v. *City of Duluth, et al.,* 150 Minn. 374, 185 N. W. 390, 32 A. L. R. 1268, which quotes with favor the rule laid down by this Court in *Greedup, et al.,* v. *Franklin County, et al., supra.*

There is another more cogent and compelling reason why equity had jurisdiction in this case and why the decree of the Chancery Court is correct; that is, to prevent a diversion of public funds. The City Council of Fayetteville, by the former ordinance of June 17, 1947, submitted to the voters of that city the question of whether the bond issue of $75,000 should be approved *"for the purpose of constructing additions to and remodeling City Hospital."* This was submitted to the voters under the provisions of Amendment 13 to the Constitution of the State of Arkansas, which gives the voters of the cities of the first and second class (Fayetteville is a city of the first class) the right to vote bonds "for the purchase of sites for, construction of, and equipment of . . . hospitals.''

This same amendment provides that the ordinance passed by the city council of such cities and submitted to the people for election shall "specifically state the purpose for which the bonds are to be issued, *and if for more than one purpose, provisions shall be made in said ordinance for balloting on each separate purpose . . .* '' (italics our own). In the absence of any objection to the contrary, it is by this Court assumed that the former

ordinance voted on June 17, 1947, fulfilled this requirement, and that the bond issue was approved by the voters for the specific purpose stated in the ordinance. The city officials issued and sold the bonds, received and now hold the proceeds. This is a trust fund to be expended for the purpose stated in the former ordinance approved by the voters, June 17, 1947.

Now, by Ordinance No. 930, it is sought to enlarge, modify and materially change the purpose first contemplated and which led to the existence of the fund now held in trust from the proceeds of the bonds. To permit effect to be given Ordinance No. 930 would constitute a diversion of funds such as is forbidden by this same amendment No. 13. It would have been a vain and idle thing to have permitted an election to be held on the latter Ordinance No. 930 when the result of such election and the adoption of Ordinance No. 930 would have led to a diversion of public funds. We, therefore, hold that appellees' complaint in equity did "state sufficient facts to constitute a cause of action," and that the decree of the Chancery Court was correct and should be affirmed.

It is so ordered.