## SIMON *v.* PORTLAND COMMON COUNCIL.

### ELECTION CONTEST—FINAL JUDGE.

Section 22 of the charter of the city of Portland provides, that " a certificate of election is primary evidence of the facts therein stated, but the council is the final judge of the qualifications and election of the mayor and of its own members, and in case of a contest between two persons claiming to be elected thereto, must determine the same."

### DECISION OF COUNCIL CANNOT BE REVIEWED.

In a contest before the common council between S. and T. for the office of mayor, the council counted the ballots cast at the election and declared the vote a tie.   S. claimed that the council committed legal errors in counting the ballots, which, if legally and properly counted, and such alleged errors corrected, would show that a majority of the votes were cast for him.   On an application for a writ of review directed to the council, *Held:* That the decision of the council was final and conclusive.

APPEAL from Multnomah.    The facts are stated in the opinion.

*R. Williams, and Bellinger & Gearin,* for appellants.

That the common council, sitting as a board to try contested elections, is an inferior tribunal and subject to the supervisory control of the circuit court, by *certiorari,* within the meaning of the constitution, has been recently held by the supreme court of West Virginia, in a well considered case, under a constitution similar to ours. (*Cunningham* v. *Squires,* 2 West Va., 422.)

The unquestionable weight of authority in this country is, if an appeal be not given or some specific mode of review provided, that the superior common law courts will, on *certiorari,* examine the proceedings of municipal. corporations, even although there be no statute giving this remedy; and the same rule applies in contested election cases. (Dillon on Mun. Corp., [3d ed.] sections 926, 440, and note on p. 2,323, 1st vol.; *Gibbons* v. *Sheppard,* 65 Pa. St., 29, 30; *Gough* v. *Dorsey,* 27 Wis., 119; *Robertson* v. *Groves,* 4 Or., 210; *Peo-*

ple v. *Wilkinson*, 13 Ill., 660; *Hastings* v. *San Francisco*, 18 Cal., 58; *Lessee, etc.*, v. *Ink*, 9 Ohio, 142.)

It has been universally held that where, by the act creating an inferior tribunal, its adjudications were declared to be final, nevertheless, a writ of *certiorari* would lie.    (*Thompson* v. *Multnomah County*, 2 Oregon, 39, 40; Wells on Jurisdiction of Courts, sec. 73; *Cunningham* v. *Squires*, 2 West Va., 422; *Ex parte Heath, et al.*, 3 Hill, 50, 51, 52; *Ex parte Mayor of Albany*, 23 Wend., 287; *LeRoy* v. *Mayor, etc.*, 20 Johns., 430; *King* v. *The Rockdale Canal Co.*, 6 Eng. L. & E., 241; *Lawton* v. *Com. of Cambridge*, 2 Caines, 182; *Ackerman* v. *Taylor*, 8 N. J. L., 376; *State* v. *District Medical Society*, 35 N. J. L., 200; Smith's Leading Cases, 984; *Robertson* v. *Groves*, 4 Or., 210; *State* v. *McKinnen*, 8 Or., 493; *People* v. *Hall*, 80 N. Y., 117; *State* v. *Fitzgerald*, 44 Mo., 425; *Murfree* v. *Leeper*, 1 Overt [Tenn.], 1; *Reardon* v. *Gray*, 2 Hayw. [N. C.], 245.)

The evident purpose of section 22 is, merely, to make the determination of the council upon the question of the election and qualifications of the mayor and of its own members final, when collaterally drawn in question between third parties, and in the first instance and in the same sense that the judgment of any inferior court is final—conclusive so far as that tribunal is concerned, and until set aside by some appropriate proceeding.    This very section, in express terms, permits a contest between two persons claiming to have been elected, and declares that the common council *shall determine such contest*.    It does not provide that the determination of this contest shall be final or conclusive, and that no court shall take cognizance thereof, but merely directs the council to determine the same.

*Geo. H. Williams, Hill, Durham & Thompson, Whalley & Fechheimer*, for respondent.

Independent of the express language of the statute, it is obvious from other considerations, that the intent of the legis-

lature was that in a contest before the council its decision should be conclusive upon the parties.

To maintain the doctrine that the common council is the final judge in this matter, the following authorities are cited: (*Selleck* v. *Common Council*, 40 Conn., 359; *People* v. *Fitzgerald*, 41 Mich., 2; *Snell* v. *Bridgewater Cotton Co.*, 2 Pick., 296; *Commonwealth* v. *Jones*, 10 Bush. [Ky.], 725; *Rogers* v. *Johns*, 42 Texas, 339; *Echols* v. *State*, 56 Ala., 131; *State* v. *Stewart*, 26 Ohio St., 216; *Ex parte Strahl*, 16 Iowa, 369.)

To hold that the decision of the council is subject to review is to exscind the word " final " from the statute. No possible use of the word where it stands can be imagined if it was not used to signify an end to the controversy to which it relates. The word final is sometimes applied to the judgment of a court to distinguish it from interlocutory judgments. When so used it is intended to signify a judgment by which all the questions in a case have been determined as contradistinguished from a judgment in the same case by which one or only a part of the questions therein have been decided. The word " final " in this statute is not used in any such sense. It is here applied to the court. That is to say, the council shall be the appellate tribunal to which all questions arising before the subordinate tribunals or boards shall be referred for a final adjudication. The letter, spirit and reason of the statute, all point to this conclusion.

Taking the constitution and the laws of the state together, it is clear that the appellate jurisdiction or supervisory control of the courts over election boards is not to be exercised upon a writ of review or writ of error, but a contest in the courts over an election is to be carried on in the nature of a suit, in which the court exercises an original jurisdiction, and in which all the facts of the case are to be examined and reviewed, and the will of a majority of the legal voters ascertained. It is within the power of the legislature to say in what courts, and as to what offices, and in what manner, these contests shall be

conducted, and when and where they shall terminate. This power has been exercised by the legislature of this state, and all considerations of public policy require that it should be sustained. To support these views, reference is made to the following authorities: (*State* v. *Marlow*, 15 Ohio St., 114; *People* v. *Matteson*, 17 Ill., 167; Sec. 139, Dillon Municipal Corporations; *O'Docherty* v. *Archer*, 9 Texas, 295; *Ewing* v. *Filley*, 43 Pa. St., 384; *Commonwealth* v. *Leech*, 44 Pa. St., 332; *People* v. *Mahoney*, 13 Mich., 481; *Steele* v. *Martin*, 6 Kansas, 430.)

By the Court, WALDO, J.:

This is an appeal from the judgment of the circuit court for Multnomah county, quashing a writ of review directed to the common council of the city of Portland.

At a general election for municipal officers, held in the city of Portland on the 20th day of June, 1881, the appellant, Joseph Simon, and D. P. Thompson were candidates for the office of mayor. On the 23d day of June, 1881, a certificate of election was awarded to Thompson. The appellant contested the election before the common council, where the vote was declared to be a tie.

The grounds upon which the appellant relies to reverse the decision of the council are, that said council, in counting the ballots, rejected two ballots from the count which should have been counted for the appellant, and counted two ballots, called " posters " in the argument, for Thompson, which should have been rejected. The ballots which the appellant claims should have been counted for him, designated in the transcript and argument as ballot 100, and ballot 200, contained the names of both candidates. Ballot 100 contained the name of D. P. Thompson in print, the name of Jos. Simon written in pencil in a line with and over the name of Thompson, and a pencil line drawn along, intended to erase either one or both names. Ballot 200 contained, for the office of mayor, the name of D. P. Thompson in print, and the name of Jos. Simon written in pencil.

Errors of fact cannot be re-examined on a writ of review or *certiorari*, and the most that can be claimed is that the action of the council in counting the two ballots for Thompson, and rejecting the ballots 100 and 200, and not counting them for Simon, was erroneous in point of law. But an obstacle to the consideration of the question presents itself at the threshold.

Section 22 of the charter of the city of Portland provides: "A certificate of election is primary evidence of the facts stated, but the common council is the final judge of the qualifications and election of the mayor and of its own members, and in case of a contest between two persons claiming to be elected thereto, must determine the same."

Upon this section counsel for the respondent say in their brief: " To hold that the decision of the council is subject to review, is to exscind the word ' final ' from the statute. No possible use of the word where it stands can be imagined, if it was not to signify an end to the controversy to which it relates. The word *final* is sometimes applied to the judgment of a court, to distinguish it from interlocutory judgments. When so used it is intended to signify a judgment by which all the questions in a case have been determined, as contradistinguished from a judgment in the same case in which one or only a part of the questions therein have been decided. The word *final* in this statute is not used in any such sense. It is here applied to the court." " Can any intent be imagined or imputed to the legislature other than an intent to oust the jurisdiction of the courts over an election contest as to the mayor and members of the common council of the city of Portland? They either changed the law in that respect or they did not. If they did, the circuit court has no jurisdiction in this case; if they did not, then the word *final* in the statute has no meaning or effect."

An act of the legislature of Connecticut provides: " That the board of councilmen for the city of South Norwalk shall be the final judges of the election returns, and of the validity

of elections and qualifications of its own members. In *Sel-leet* v. *Common Council of South Norwalk*, 40 Conn., 361, it is said of this provision: "It makes the common council of the city final judges of the election, returns, and qualifications of its own members. By the use of the word *final* the legislature intended to divest the superior court of jurisdiction in such cases, and make the common council the sole tribunal to determine the legality of the election of its own members."

So in *People* v. *Fitzgerald*, 41 Mich., 2, a provision in a city charter making the common council the *final judges* of the election of aldermen, was held to exclude the jurisdiction of the court on a *mandamus* to reinstate one whom they had excluded without a proper hearing on the merits. So of an analagous provision in the statute of Kentucky, Chief Justice Simpson says, *obiter*, in *Bateman* v. *Megowan*, 1 Metcalf, 538: "The decision of the contesting board is made final and conclusive by the statute. By this provision the legislature evidently intended to accomplish a two-fold purpose. A speedy and summary mode of deciding cases of contested elections, and determining finally and conclusively which one of the claimants was entitled to the office, was very important, and to effect this object the organization of this board was provided for. Another object equally important was to withdraw these contests from the jurisdiction of the courts; and, as was said in the case of *Newcum* v. *Kirtly*, 13 B. Monroe, 517, 'to prevent the ordinary tribunals of justice from being harassed, and indeed overwhelmed, with the investigations, and involved in the excitements to which these cases may be expected to give rise.' This object was also effected by making the decision of this board final and conclusive in all cases of contested elections. From the decision of this board there is no appeal. Its decisions are final on all questions of *law* or *fact* which may be involved in the investigation of the rights of the claimants to the office in the contest." See also, *Coon* v. *Mason County*, 22 Ill., 666;

*Moore* v. *Mayfield*, 47 Ill., 167; *Peavey* v. *Robbins*, 3 Jones, 341.

A final judge is therefore one whose decisions are final *and* conclusive. To show that notwithstanding this section of the charter, the circuit court still had power to review the decision of the council on *certiorari*, the appellant cited the following authorities: *Thompson* v. *Multnomah County*, 2 Or., 39; *Cunningham* v. *Squires*, 2 W. Va., 422; *Ex parte Heath*, 3 Hill, 50; *Ex parte Mayor of Albany*, 23 Wend., 287; *Leroy* v. *Mayor*, 20 John., 430; *Lawton* v. *Com. of Cambridge*, 2 Caines' Rep., 182; *State* v. *District Medical Society*, 35 N. J., 200; 3 Lansing, 149; 17 Iowa, 387; 2 Kernan, 411; 9 Ark., 73; 9 Minn., 166; Smith's Leading Cases, 984; *Robertson* v. *Groves*, 4 Or., 210; *State* v. *McKinnon*, 8 Or., 493; *People* v. *Hall*, 80 N. Y., 117; *Murfree* v. *Leeper*, Overton [Tenn.], 1; *Reardon* v. *Gray*, 2 Hayne [N. C.], 245.

Before considering how far these authorities go to show what appellant claims for them, it may be well to look at a few earlier cases, and note the principle on which they rest. And first, it must be remembered, that "courts of limited jurisdiction must not only act within the scope of their authority, but it must appear on the face of their proceedings that they did so; and if this does not appear, all that they do is *coram non judice*, and void." (Washington, J., *Kemp* v. *Kennedy*, Pet. C. C., 36.) *In Rex* v. *Croke*, Cowper, 29, where the proceedings were quashed on *certiorari*, Lord Mansfield said: "This is a special authority, delegated by act of parliament to particular persons, to take away a man's property and estate against his will, therefore, it must be *strictly* pursued, and must appear to be so upon the *face* of the order."

Thus, in *State* v. *Metzger*, 26 Mo., a conviction for an assault and battery before a justice of the peace in Gasconade county, was set aside, because it did not appear on the face of the proceedings that the assault was committed in the county.

So in *Proctor* v. *The State of Delaware*, 5 Harr., 387, the conviction before a justice of the peace of a non-resident free negro coming into the state, was quashed on *certiorari*, because, for one reason, the record of the conviction did not show that the coming into the state was after the passage of the act, the court saying: " In a specially delegated jurisdiction and a proceeding under a penal law, the record must show everything requisite to bring the case within the jurisdiction, and the offense within the law."

Now, the oft-cited case of *Rex* v. *Morely*, 2 Burr., 1040, arose under the conventicle act of 22 Car., 2, c. 1. Morely was a Methodist preacher, and had been convicted under that act before a justice of the peace, had appealed to the quarter sessions, been tried by a jury and judgment given against him on their verdict. A *certiorari* having been issued out of King's Bench, counsel for prosecution contended that after all this, a writ of error might lie, but not a *certiorari*, which will only lie where there is no other remedy. They also cited a clause in the sixth section of the act: " That no other court whatsoever shall intermeddle with any cause or causes of appeal upon this act, but they shall be finally determined in the quarter sessions only." Counsel for the writ argued that these words " meant no more than that the facts shall not be re-examined, but the legality may, or a want of jurisdiction may be taken advantage of. The case may be such that the justice had *no* jurisdiction of the matter." The court was unanimously of the opinion that the writ ought to issue, and say: " A *certiorari* does not go to try the *merits* of the question, but to see whether the limited jurisdiction have *exceeded their bounds*." The defect in the proceedings was, that it did not appear on their face that the defendant was a subject of the realm, which was an essential requisite.

The case of *King* v. *Jukes*, 8 T. R., 542, was that of a conviction, and an appeal to the quarter sessions with power to hear and finally determine the matter. Yet the conviction was quashed in the King's Bench on *certiorari*, because the

information did not negative an exception introduced into the statute. The objection, the court said, was one of substance, and was similar in principle to that urged against the conviction in *Rex* v. *Morely.*

In *Cates v. Knight*, 3 T. R., 442, it is said by Erskine, Shepherd, Garrow and Marryat, in argument: "This is a question which goes to the jurisdiction of the court, concerning which the rule has long been settled, that the superior courts at Westminster can only be ousted by express words." The reporter, in a note, cites the case of *Rex* v. *Morely*, above.

It will be noticed that not one of these cases goes to the extent of holding that where an inferior tribunal is proceeding within the bounds of its jurisdiction, with power to hear and finally determine, its decisions can be reviewed on *certiorari* for error, strictly, either of law or fact. The point has been expressly ruled otherwise in *People* v. *Betts*, 55 N. Y., 600. The court were not cited to this case by counsel, but its relevancy to the question under consideration requires that it should not be overlooked. The case was a common law *certiorari* to commissioners on their second report, appointed to assess damages to the owner of real estate, taken by a railroad company for the purpose of its road. The statute enacted that "the second report shall be final and conclusive on all the parties interested." Notwithstanding this language, it was insisted that the way was still open by a common law *certiorari* for a review of any *legal errors* committed by the commissioners, upon a second appraisal. The opinion, by Mr. Justice Folger, says: "We fail to perceive how exemption is attained from the express prohibition of the statute, that the second report shall be final and conclusive on all the parties interested, any more by a common law *certiorari* than by any other proceeding for a review and correction of error. The office of a common law *certiorari* is, in strictness, merely to bring up the record of the proceedings of an inferior court or tribunal, to enable the court of review to deter-

mine whether the former had proceeded within its jurisdiction, and not to correct mere errors in the proceedings."

The learned judge then goes on to show how the original office of the writ had been extended in New York by judicial decisions, "not only to bring up the naked question of jurisdiction, but the record, as well as the ground or principles on which the inferior jurisdiction acted, and the question of law on which the relator relies." Further on he says: "And when the statute says that the second appraisal shall be final and conclusive, it is not that it means only to refuse that mode of remedy (appeal), but that it means to deny any remedy. Nor do any of the decisions above cited authorize, hold, or intimate, that in such case the common law writ of *certiorari* may be availed of to review *erroneous decisions*, or proceedings of boards or inferior tribunals."

The weight of this authority presses heavily against the case made for the appellant. The distinguished and able counsel who appeared for the appellant, were unable to find an authority that showed, or tended to show, that legal errors committed by an inferior tribunal, proceeding within the bounds of its jurisdiction, can be reviewed on *certiorari*, when the statute makes such tribunal the final judge of the matter submitted to its decision. The only semblance of an authority for such a position was a dictum from *State* v. *Cockrell*, 2 Richardson [S. C.], which, counsel did not note, had been overruled in *Ex parte Childs*, 12 S. C., 111.

In the case of *Ex parte Heath*, 3 Hill, 50, the relator claimed to have been elected assessor of the sixth ward of New York. It was the duty of the mayor to administer the oath of office, which he refused to do, because, in the special return of election made to him by the board of canvassers, they said they were unable to declare what persons were elected, "by reason of the lawless violence committed upon the inspectors of the first district, whilst in the act of counting the ballots, and the dispersion of the ballots before they were counted, the history of which is contained in the return of said inspec-

tors, a copy of which is hereto annexed." There were four districts in the ward, from three of which regular returns were made and received by the mayor. The relator moved for a writ of *mandamus* to be directed to the mayor, commanding him to administer the oath of office to the relator, and the court directed the writ to issue, because the failure to make the return from the first district did not annul the election. Among other things, it was urged by counsel, that exclusive cognizance of all questions concerning elections belonged to the common council. The court did not deem the question on the application for the *mandamus* identical with the question of election. But referring to the words, " each board shall be the judge of the qualifications of its members," were of opinion that it would be difficult to show that the enactment amounted to anything more than the bestowment of a power concurrent with its own. The words did not, like the charter of 1830, speak of a *sole* power in the common council. Commenting on that charter, they then go on to say: " If the words of the charter had, or came afterwards to have, the force of a statute, still it might be answered that it contains no clause expressly denying to the King's Bench, or the court holding its place, the exercise of its general power in the particular place. The word *solely* might, by a liberal construction, imply an intent to take away the power. So might a statute declaring the decision of an inferior court conclusive or final, be construed to take from this court the power to review the decision by *certiorari*. But it has been held that these or the like words shall not be construed to oust the superior court of its supervisory power; and that to give a statute such an effect, the legislature must say, in so many words, that they ' intended to take the power away.' " (Citing *Lawton* v. *Com. of Cambridge*, 2 Caines' Rep., 179; *The King* v. *Com. of Fens*, 2 Keble, 43; *Rex* v. *Morely*, above.)

These views, as construed for appellant, are irreconcilable with the decision of Mr. Justice Folger, in 55 N. Y. But,

in fact, there is no conflict between them, as may be readily shown. The opinion in *Ex parte Heath* was written by Mr. Justice Cowan, and the same judge gave the opinion of the court in *Ex parte Mayor of Albany*, 23 Wend., 277, 278, and he there cites the case cited by him above, from 2 Keble, which was a question whether the commissioners had *pursued their power*, and says: "This case declares another principle which has been held by this court, that a writ of *certiorari* will lie to an inferior tribunal, even though the act by which it is created declared its adjudication to be final. (Vide *Lawton* v. *Com. of Cambridge*, 2 Caines' Rep., 179.) In 2 Keble it was held to lie, though the act declared the proceeding should be without appeal. This was a vigorous assertion of jurisdiction, but the compass of the writ is carefully limited at the same time, as we have lately held in a series of cases. The amount of these is, that we will not go beyond the question of *power*, which is *another word for jurisdiction*."

The opinion of the same judge, in *Birdsall* v. *Philips*, 17 Wend., is explicit that the erroneous decision of an inferior tribunal, upon questions of either law or fact, cannot be reviewed on *certiorari*. "This writ," he says, "is but an emanation from the general supervisory duty of the supreme court, to restrain the action of all inferior magistrates within their legal grasp." Thus it clearly appears, that by his language in *Ex parte Heath*, he meant no more than that the writ lay where the inferior tribunal exceeded its legal bounds.

In *Lawton* v. *Com. of Cambridge*, 2 Caines' Rep., 117, the commissioners of highways had laid out a highway, which, on an appeal to the judges of the common pleas, had been confirmed, and the statute declared the decision of the judges conclusive. The court take it as well settled, that a *certiorari* will lie even where the inferior tribunal is authorized finally to hear and determine. But, as in all the other cases, the objection made to the proceedings, though not sustained, were deemed jurisdictional; counsel arguing, "for as the whole proceeding is in derogation of the rights of individuals, nothing

can be taken by way of intendment." On the face of the return it appears that the road was laid out contrary to law."

The cases of *Leroy* v. *The Mayor*, 20 John., 43, and *People* v. *Assessors*, 3 Lansing, add nothing to the case. In 3 Lansing the court say, " the writ lies in such cases for the purpose of ascertaining whether the inferior tribunal has kept within the *power* conferred upon it."

The case of *Ackerman* v. *Taylor*, 8 N. J. L., [3 Halstead] 376, draws the distinction between the power to review on the merits and for excess of jurisdiction, and goes to maintain the case of the respondent. The case was upon a statute providing that no *certiorari* shall be issued to remove proceedings had in pursuance of the provisions of the act. But the court say, suppose the proceedings are had, not *in pursuance*, but *under pretense*, of the statute? Can it be supposed that the legislature intended, in such a case, to deny the use of the writ? They were of the opinion that, notwithstanding the statute, legal subjects of inquiry might be presented for their consideration on *certiorari*, but say: "Although we do not examine the merits of their decisions, from which we are restrained by the just effect of the final and conclusive quality attached to them, we nevertheless inquire whether they have exercised or exceeded the jurisdiction given to them; whether they have pursued the powers granted in their creation, or assumed others never confided to them. The superintending power of this court, and the use of the writ of *certiorari*, are no doubt within the scope of legislative action; may be restrained, abridged, perhaps abolished. Yielding on the one hand to the will of the legislature, we are on the other to deny the writ to a citizen in no case where he may lawfully claim it."

*Murfree* v. *Leeper*, 1 Overton (Tenn.) 1, (1791) has nothing more than what is to be found in that part of the opinion in *Exparte Mayor of Albany*, already cited. A case from the reports of Tennessee, much more in point, is *Wade* v. *Murry*, 2 Sneed, 50 (1854). This was a proceeding to contest the election of Murry to the office of attorney-general for

the fourth judicial circuit of Tennessee. The legislature had provided a special tribunal for the trial of contested elections, before which a contest for the office of attorney-general was had, and the election declared void. Murry then applied for a *certiorari* to review the decision. Under the act of the legislature, as construed by the court, the decision was final and conclusive. The election had been declared void, because "the sheriff of Smith county had failed to open and hold an election in the ninth civil district of said county; and the sheriff of DeKalb had, in like manner, failed to open and hold an election in the thirteenth civil district of the last named county." So that the facts being admitted, the decision of the inferior tribunal, alleged to be erroneous, was upon a question of law. The case presented to the court, therefore, was precisely the case now before this court. The court held that the writ would not lie, and say: "It is true that this tribunal, created by the act of 1854, is an *inferior* jurisdiction in the meaning of our constitution and laws, and it is equally true that the *certiorari* is the appropriate method by which the circuit court, as a court of general jurisdiction, exercises control over all inferior tribunals. But it would be contradictory to hold that a writ of error proper would not lie, and yet the *certiorari*, as a substitute for the writ of error, might be maintained; and it would be no less contradictory or absurd to hold that a decision intended to be final and conclusive, could be reviewed in any mode whatever." (See also *Ex parte Childs*, 12 S. C., 111.)

The writ of *certiorari* has no peculiar virtue that exempts or tends to exempt it from statutory control. It was the nature of its office, not any inherent power in the writ itself, that created the apparent exception. When the operation of the writ was extended to an examination into errors of law, it fell at once within the operation of statutes making the decisions of the inferior tribunal final and conclusive. It is because the common council is an inferior tribunal, exercising judicial powers, whose procedure is not according to the course

of the common law, that the right to review its determination is claimed.   Concede this, and, also, that the appellant has no other remedy.   This gives to the application for the writ all the strength that it is possible to give it.   But the decision of the council, as we have seen, is final and conclusive by the statute.   Under such circumstances, the court are unanimously of the opinion that the law is settled beyond doubt or controversy, against the power of the circuit court to issue the writ in a case like that for which it is demanded.

Counsel for the appellant in their brief say:   " Suppose that the council had found, from the evidence before it, and entered of record, that plaintiff had received 2,000 votes, and that defendant had received 1,500 votes, and then the council should, upon this finding, determine and decide that defendant was duly elected, and award him the office; will counsel for the respondent assert that this could not be corrected on review?   Would the courts be powerless to set aside this glaring abuse of authority?"   Probably not; because in the case supposed, there would be an abuse of authority—not an *erroneous* exercise of it—an excess, not an erroneous exercise of power.

The case before us is different.   The decision complained of was one which the council had a strict, legal right to make. Their decision, at the most, is but erroneous on the merits— not void—a question of which the council, not ourselves, are the final judges.

That section 9 of article 7 of the constitution of the state, denies power to the legislature to make the decision of the council final and conclusive, is a position taken by counsel for the appellant, but which is not supported by any authority cited, or which it is believed possible to cite.   A statutory right may be restricted to a statutory remedy.   The legislature may abolish the office of mayor at any time it sees fit. Much more may they put restrictions upon the right to the office.   And, too, if such a construction could be put on the constitution, it would leave the remedy by *quo warranto* open

to the appellant, which must have the effect to defeat this proceeding.

The case has been erroneously entitled by counsel as against D. P. Thompson, instead, as it should have been, against the common council of the city of Portland. (*W. & N. R. R. Co.* v. *Railroad Commissioners*, 118 Mass., 563; *Crawford* v. *Township Board*, 22 Mich., 405.)

The judgment of the circuit court should be affirmed, and it is so ordered.

Judgment affirmed.