[Filed March 19, 1890.]

# *STATE EX REL. HEATH *v.* THEODORE KRAFT.

MUNICIPAL CORPORATION—FAILURE TO QUALIFY—VACANCY.—1. Sections 24 and 27 of the charter of the city of Albina (Sess. Acts, 1889, pp. 240, 241), when construed together, require a person elected as councilman of that city to qualify on or before the first Monday in July next after his election, and a failure to do so may work a forfeiture of his office; but forfeitures are never favored, and, before such forfeiture could be claimed or enforced by the city, its officers must have performed all the duties imposed by the charter in relation to such election and qualification. *Held*, further, in case of a tie vote for councilman on the face of the return, the duty to qualify does not arise until the result of the election shall be finally determined in some mode provided by law.

ELECTION—TIE—ILLEGAL VOTES.—When, on the face of the returns of an election for councilman of the city of Albina, two candidates had an equal number of votes, if such votes were all legal, there was a tie, and no election. But, if illegal votes were cast for both or either of the candidates, the election was not thereby vitiated, but the true result could only be known by deducting the illegal votes; and in such case the person elected is not bound to anticipate the result of an investigation by taking the official oath before it could be ascertained whether he was elected or not.

MUNICIPAL ELECTION—POWER OF COUNCIL—CUMULATIVE REMEDY.—Where the charter of a municipal corporation makes the common council the judges of the election and qualification of its members, but not the final or exclusive judges, the jurisdiction of the courts remains, and the remedy conferred on the council is cumulative. But, *quære*, is not such legislation prohibited in the state by article 7, § 9, of the constitution?

BALLOT—SECRECY—EVIDENCE.—The secrecy of the ballot is for the lawful voter only, and not for the spurious. The public policy involved does not extend to the voter who has voted illegally. He may be required to disclose for whom he voted, and in any case the exemption from obligation to disclose the character of his vote can be claimed (only by the voter himself. If, when the question is put to him as a witness, he sees fit to answer it, there is no objection to his testimony.

HARMLESS ERROR.—Where the trial court errĕd in the admission of evidence, and the appellate court can clearly see that it was impossible for such evidence to have injured the appellant, the judgment will not be reversed.

Multnomah county:    E. D. SHATTUCK, Judge.

Defendant appeals.    Affirmed.

The object of this proceeding is to try the title to the office of councilman of the city of Albina, in Multnomah county. The complaint, in substance, alleges that on the 19th day of June, A. D. 1889, a general election was duly held for councilman in each of the wards of the city of Albina, to elect one councilman for the term of one year, and one councilman for the term of two years; that at said election the relator, George W. Heath, and the said defendant were candidates for the office of councilman for the term of one

---

*Omitted from previous volume by mistake.—[REPORTER.

()

year in the Second ward of said city; that at said election the relator received the greatest number of votes for said office in said ward, and was thereby duly elected to be a member of the common council of said city for the period of one year from the 1st day of July, 1889; that on said last-named day the defendant usurped said office of councilman, and has ever since continued to withhold the same from the relator.   The defendant's answer, after denying the material allegations of the complaint, alleges as a further and separate defense that the said George W. Heath did not, by the first Monday in July next after his alleged election to the office of councilman for the term of one year, in the Second ward of said city of Albina, nor at any time, qualify therefor, by either taking or filing with the police judge of said city any oath of office, whereby he was, and should have been, deemed to have declined said office, and did decline such office, and that there was a vacancy therein.   For another and separate answer the defendant alleges that on the 1st day of July, 1889, there was a vacancy in the office of member of the common council of the city of Albina, from the Second ward of said city, for the term of one year, commencing on said 1st day of July, upon a failure of the voters of said ward to elect an incumbent for said office at the general election held in said city on the third Monday in June, 1889, and also by the failure of any person elected to said office to qualify therefor as required by law; and thereupon, on said 1st day of July, 1889, the defendant was duly appointed by the common council of said city to fill said office from said last-named date until the first Monday in July, 1890, and thereupon the defendant, within five days thereafter, to wit, on the 2d day of July, 1889, duly qualified for said office, by taking and filing with the police judge of said city the oath of office by law in such case required, and then entered upon, and has ever since continued in, the discharge of the duties of said office to which he was so appointed.   By the reply it appears that the relator and defendant were both candidates for said office at

said general election, and that the judges and clerks of said election wrongfully, and contrary to the fact, certified and returned that the relator and the defendant had each received an equal and the highest number of votes cast for councilman in said ward, and that there was no election; that thereafter, and within the time for qualifying for said office, the relator appeared before the police judge of said city of Albina and offered to qualify by taking and filing the requisite oath of office; but said police judge wrongfully refused to permit said relator to take or file said oath, or to qualify. The new matter in the answer is denied by the reply. A trial resulted in a judgment of ouster against the defendant, from which he has appealed to this court.

*P. L. Willis*, for Appellant.

*Henry E. McGinn*, district attorney, and *Paul R. Deady*, for Respondent.

STRAHAN, J.—Several questions were presented by counsel for the appellant, which will be separately noticed. Counsel for appellant argue that the relator, having failed to take and file his oath of office with the recorder on or before the first Monday in July next after his election, forfeited his office, if he were otherwise entitled to it, and created a vacancy which the common council was entitled to fill by appointment. It being substantially admitted on the record that the relator did not so qualify, if this contention can be sustained, it must reverse the judgment, and terminate this case. Section 24 of the act incorporating the city of Albina provides (Sess. Acts, 1889, p. 240): "The term of office of every person elected to office under this act shall commence on the first Monday in July next after his election, and terminate accordingly, except as otherwise provided in this act; and by such time such person must qualify therefor by taking and filing with the police judge the oath of office, * * * or he shall be deemed to have declined, and the office considered vacant." Section 25 prescribes the form of the oath. Section 27 relates to vacancies in office, but does not declare a failure to qualify within

the time specified shall create a vacancy; but section 28 declares: "A vacancy in any office caused by the failure of any person elected to qualify therefor as prescribed in section 24, or made by or consequent upon the judgment of any court, or consequent upon a failure to elect, or in any of the cases specified in section 27, must be filled as follows." And then follows a statement of how vacancies shall be filled. Construing sections 24 and 28 together, it was the manifest intention of the legislature to declare a forfeiture in case the officer elected failed to qualify within the time prescribed by section 24. But forfeitures are never favored, and, before such forfeiture could be claimed or enforced by the city, its officers must have performed all the duties imposed upon them by the charter; and, when the relator applied to the police judge, to take and file the proper oath of office before him, that officer was bound to discharge the duty of administering such oath, and filing the same in his office. It is doubtless true the oath might be taken before any officer authorized to administer oaths, but it could not be filed elsewhere than with the police judge. If the construction contended for is sound, the police judge might cause a forfeiture of any office in the city by simply locking up his office, and disappearing from the city, during the day or time such oath must be filed, thus rendering it impossible to comply with the charter within the time limited. It is claimed that his refusal to administer and file the oath of office within the time has the same effect. It was in effect suggested that the consequences might have been avoided by the relator by going before some other officer, and taking the oath of office, and then offering to file the same with the police judge. Still another objection to the appellant's contention: Sections 19 and 20 of the charter provide a canvassing board for the city, whose duty it was to certify the result of the election; and by that certificate it appeared that each of them received 53 votes. If these votes were all legal, there was no election; but if illegal votes were cast on either or both sides, the election was not thereby vitiated,

but the true result could only be known by deducting the
illegal votes in each or either case. In such event, I do not
think that the person elected was bound to anticipate the
result of an investigation by taking the official oath before
it could be ascertained whether he was elected or not. In
such case, I have no doubt the qualification might be post-
poned until after the result of the election was ascertained
in some one of the ways provided by law.

This brings us to another question necessary to be con-
sidered. Section 22 of the charter is as follows: "A cer-
tificate of election is primary evidence of the facts therein
stated; but the council is the judge of the qualifications of
mayor and of its own members, and, in case of a contest
between two persons claiming to be elected thereto, must
determine the same, subject, however, to the review of any
court of competent jurisdiction." Counsel for appellant
insisted that this section vested the jurisdiction now invoked
in this case in the common council in the first instance, and
that the court could only review the action of the council.
It must be observed that this charter does not vest the
council with exclusive or final jurisdiction over the subject.
If it did, the case would be governed by *Simon* v. *Common
Council of Portland*, 9 Or. 437. But here the council is simply
vested with jurisdiction which is neither final nor exclusive,
with the power of review in the courts. That power would
have existed in the courts without the saving clause in the
charter. Where the remedy given before the council is not
made final nor exclusive, it must be regarded as merely
cumulative, leaving the jurisdiction already vested in the
courts under the general statutes unaffected; and this view
of the law is fully supported by *People* v. *Hall*, 80 N. Y. 117.
But is not the legislature restrained by article 7, § 9, of the
constitution from divesting the jurisdiction of the circuit
courts over any inferior court, officer or tribunal?

Upon the trial in the court below the state introduced
evidence tending to prove that Dawson, Roenick, Glover,
Sealy and Shriver voted at said election for councilman, and

that they were not legal voters. They were then severally called and questioned as to for whom they voted, and several of them testified that they voted for Kraft; to which evidence the defendant objected, and duly saved proper exceptions. This presents a new question in this state, and one that is conceded to be important. There can be no doubt that one important object of the system of voting by ballot is secrecy, so that the voter may freely exercise his choice, uninfluenced by power, station, or the conditions by which he is surrounded; but this protection extends to the lawful voter only, and not to the spurious. It is the lawful voter around whom the law throws its protection, and not to him who assumes to exercise the sacred prerogative of a voter without being duly qualified. McCrary, Elec. § 459, states the rule thus: "It is very clear that the rule which, upon grounds of public policy, protects the legal voter against being compelled to disclose for whom he voted, does not protect a voter who has voted illegally from making such disclosure. To give to that rule this wide scope would be to make it shield alike the right and the wrong, the honest and the dishonest. It was intended to protect the inviolable secrecy of an honest ballot, and thus the purity of the ballot-box. It was not intended to be used in aid of the schemes of corrupt men to defeat the will of the people. It follows that, having proven that A voted at the election in question, and that he was not a legal voter, he may be required to testify as to the person or persons for whom he voted." This authority would seem to effectually dispose of this exception, but there remains another answer, equally as conclusive and satisfactory. The exemption from obligation to disclose the character of his vote can be claimed only by the voter himself, and the question can, therefore, be put to the witness; and, if he sees fit to answer, there is no objection to the testimony. (Paine, Elec. § 766.)

If the ballots that were offered in evidence had been introduced for the purpose of overturning an official count, then, clearly, the plaintiff did not identify them, or show

their careful preservation, so as to entitle them to be introduced in evidence. (*Fenton* v. *Scott*, 17 Or. 189, 11 Am. St. Rep. 801.) And I am strongly disposed to think that there was not enough shown to introduce them for any purpose. But they in no manner affected the result to the detriment of the defendant. On the contrary, he appears to have gained one vote by their introduction. In such case the error, if error it was, was harmless. We can clearly see that the party complaining was not, and could not have been, prejudiced by the introduction of the improper evidence. We do not, therefore, feel called upon to reverse the judgment for that reason.

These were all of the questions made in this court, and their examination requires an affirmance of the judgment appealed from.